BENJAMIN C. PREISNER ET AL. *v.* AETNA CASUALTY AND SURETY COMPANY ET AL. (12919)

PETERS, C. J., SANTANIELLO, HIGGINS, F. HENNESSY and MENT, Js.

Argued March 4—decision released May 5, 1987

*Lewis K. Wise,* for the appellants (plaintiffs).

*Lee L. Bennett,* with whom, on the brief, were *Thomas J. Groark, Jr.,* and *John A. Danaher III,* for the appellees (defendants).

PETERS, C. J. This case concerns the right of indemnification of an accommodation comaker of a promissory note who settles with the holder of the note during the pendency of an appeal by the underlying obligor from a judgment of liability.[1] The plaintiffs, Benjamin C. Preisner and his assignee, Robert L. Hirtle, Jr., brought an action for damages for breach of contract against the defendant Aetna Casualty and Surety Company (Aetna) and for conversion against the defendants Aetna and Suzio Insurance Center (Suzio). The trial court granted the defendants' motion for partial summary judgment and the plaintiffs have appealed. We find error.

According to the stipulated facts, the plaintiff Benjamin C. Preisner decided, on November 1, 1974, to purchase an insurance agency from Paul King, Jr. As part of this purchase, Preisner issued to King, as payee, a $68,000 noninterest bearing promissory note, on which he and Aetna were comakers. In order to finance this undertaking, Preisner and Aetna, on November 11, 1974, entered into an agency loan guarantee agreement. The loan guarantee provided that Aetna would agree to act as comaker of the note to King in return for Preisner's promise to pay the note and to indemnify Aetna "if it becomes obligated to make any payments or sustains

---

[1] For present purposes, we need not address the considerable overlap between the terms accommodation party, surety and guarantor. See General Statutes §§ 42a-3-415 and 42a-3-416.

any loss" as a result of Preisner's failure to pay the note promptly upon its due date. As security for the loan guarantee, Preisner gave Aetna a security interest in his insurance business. Aetna was given authority to sell this collateral in the event of Preisner's default on the loan guarantee.

King negotiated the Preisner note to Funding Consultants, Inc. (Funding), on January 18, 1975. When Funding thereafter demanded payment of the note from Preisner, he refused, alleging that King had fraudulently misrepresented the financial condition of the insurance agency at the time of its sale to Preisner. Funding then brought suit on the note (the Funding action), claiming a right to recover on the note as a holder in due course that was unaffected by any personal defense such as fraudulent inducement. The Funding action was originally brought only against Aetna, which impleaded Preisner as a third party defendant, but thereafter Preisner was added as a defendant in the principal action as well. Both Aetna and Preisner raised defenses of failure of consideration arising out of King's alleged misrepresentations, and challenged Funding's status as a holder in due course. At the trial of the Funding action, the parties stipulated that any judgment against Aetna would also be a judgment against Preisner. After a jury verdict in favor of Funding, and in favor of Aetna against Preisner in the same amount, both Aetna and Preisner, on June 2, 1980, appealed to this court.

While these appeals were pending, Aetna, on May 11, 1982, settled the principal judgment by paying Funding $85,000. Preisner had notice of the settlement negotiations but did not participate therein. Preisner agreed that the settlement was reasonable in amount but maintained that Aetna should not have settled during the pendency of the appeal, and that he was therefore not obligated to indemnify Aetna for the settlement. When

Preisner refused indemnification, Aetna, on July 1, 1982, took possession of the insurance agency, the collateral for the security interest, and on the same day sold the agency to the defendant Suzio.

As a result of the settlement, Aetna withdrew its appeal before the case was heard for oral argument on May 11, 1982. Preisner, however, continued the prosecution of the appeal in the Funding action. In *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.*, 187 Conn. 637, 447 A.2d 1163 (1982), this court, on July 27, 1982, ordered a new trial because of the erroneous exclusion of evidence relevant to Funding's good faith and therefore relevant to its status as a holder in due course.

Upon remand of the Funding action, further proceedings between Funding and Preisner resulted in a directed verdict rendered in favor of Preisner on February 17, 1983. No appeal was taken from that judgment. Aetna withdrew its third party action against Preisner on July 27, 1983.

Preisner and his assignee Hirtle commenced the present lawsuit by filing a complaint on October 27, 1982. Its first count alleged that Aetna's seizure and sale of Preisner's insurance business on July 1, 1982, was a breach of the terms and conditions of the agency loan guarantee agreement. The second count alleged that Aetna's seizure and sale of Preisner's assets constituted an illegal conversion. The third count charged the purchaser Suzio with illegal conversion. The fourth count charged Suzio with misfeasance in the conduct of the insurance business and resultant impairment of Preisner's rights to renewal commissions. On the first three of these counts, the defendants moved for summary judgment, alleging that Aetna was entitled to indemnification, and to enforce its security interest in default thereof, because, in the earlier suit, the trial

court had rendered a final judgment in favor of Funding against Aetna and in favor of Aetna in its third party complaint against Preisner.

The trial court, in the present action, ruled that Aetna was entitled to summary judgment on the three counts in which it was a named defendant. The court found that the indemnity provisions in the agency loan guarantee agreement entitled Aetna to indemnification against actual loss or damage. According to the court, Aetna's right to indemnification arose when Preisner defaulted on the note and Aetna, as comaker, became legally liable to Funding, the holder of the note. This liability, the court determined, became fixed on March 20, 1980, when judgment was rendered against Preisner and Aetna in the underlying Funding action. Despite the pending appeal in that action, of which Aetna concededly had notice, the court further determined that the judgment of the trial court in the Funding action was final. Moreover, when Aetna withdrew its Funding appeal, that judgment, as against Aetna, became final and binding, according to the trial court in the present case. Because Aetna was legally liable to Funding when the settlement was reached, and because the terms of that settlement were reasonable, the trial court concluded that Aetna was entitled to indemnification from Preisner. On the relevant counts of the plaintiffs' complaint, the court therefore determined that Aetna, and derivatively Suzio, were entitled to summary judgment.

After the partial summary judgment in favor of Aetna and Suzio, the plaintiffs sought permission to amend their complaint to add a fifth count alleging failure to give proper notice of the disposition of the secured collateral. The trial on the fourth count resulted in a stipulated judgment conveying to Preisner all proceeds from the sale of the agency to Suzio beyond

Aetna's $85,000 security interest in the insurance agency.[2] Thereafter the trial court denied the plaintiffs' motion to amend.

In their appeal, the plaintiffs claim that the trial court erred: (1) in concluding that Aetna's seizure of Preisner's business was justified by a prior third party judgment in its favor; (2) in granting the defendants' motion for partial summary judgment without affirmative proof of Preisner's liability on his promissory note to King; and (3) in denying the motion to amend the complaint to include a fifth count relating to the manner of the disposition of the secured collateral. We find error on the first two claims but not on the third.

I

The issues raised in the first two claims can conveniently be addressed jointly, because they both turn on the effect of a final judgment, in the trial court, on an accommodation party's right to indemnification after a settlement with a creditor during the pendency of an appeal. If the trial court judgment in the Funding action did not, as a matter of law, trigger an obligation that Aetna could settle so as to invoke its right of indemnification, then Aetna would have to establish, as a matter of fact, that Preisner had improperly failed "to promptly pay the aforesaid notes" whose payment

[2] Suzio is protected as a bona fide purchaser under General Statutes § 42a-9-504 which provides in relevant part: "SECURED PARTY'S RIGHT TO DISPOSE OF COLLATERAL AFTER DEFAULT; EFFECT OF DISPOSITION. . . . (4) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this part or of any judicial proceedings (a) in the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or (b) in any other case, if the purchaser acts in good faith."

Aetna had guaranteed. Absent such a factual showing, there would have been no default on the security agreement, and Aetna would then be liable for conversion for wrongful disposition of the secured collateral to Suzio.

We note, at the outset, what is not at issue in this case. Preisner does not dispute that Aetna had the authority voluntarily to settle with Funding, and concedes that he would have been liable to Aetna, because of this good faith settlement, had the judgment in favor of Funding been affirmed by this court. Aetna does not dispute that Preisner actively contested his liability to Funding and to Aetna, and that the trial court judgment in favor of Funding was stayed during the pending appeal to this court.

The crux of the disagreement between the parties is whether Aetna was entitled to indemnification because of its good faith decision to cut its losses by settling with Funding on the basis of the trial court judgment in the Funding action. That judgment not only held Aetna liable to Funding but also held Preisner liable to Aetna on its third party claim. According to Aetna, "[t]here is no justification for compelling a codefendant indemnitee, that has suffered an adverse judgment and obtained a valid judgment of indemnification against its indemnitor, to engage in an appeal of a final judgment and to wait for the results of endless appeals and retrials." Preisner contends, however, that neither Aetna's liability to Funding, nor his liability to Funding or to Aetna, was finally established during the pendency of the Funding action appeal to this court. We agree with Preisner.

As this court has previously noted, the effect of a pending appeal upon an otherwise final judgment has aptly been characterized as "[o]ne of the most troublesome problems in applying the rule of finality [of judg-

ments]," because this is an area in which "[t]here are no technically precise and universally recognized rules . . . ." F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.4, p. 592; see also *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 573, 440 A.2d 220 (1981); 2 A. Freeman, Judgments (5th Ed. 1925) § 727. In the absence of universally applicable rules, we have recognized that the relationship between a pending appeal and a judgment depends upon the nature of the issue that is to be addressed. Accordingly, a trial court judgment has been held to be final, despite a pending appeal, insofar as the issue was the triggering of the statute of limitations; *Varley* v. *Varley,* 181 Conn. 58, 60–61, 434 A.2d 312 (1980); the continuing validity of interlocutory alimony orders; *Saunders* v. *Saunders,* 140 Conn. 140, 146, 98 A.2d 815 (1953); or the applicability of the rules of res judicata. *Salem Park, Inc.* v. *Salem,* 149 Conn. 141, 144, 176 A.2d 571 (1961). In *Bissell,* we held that such a judgment was not final for the purpose of determining the law governing mortgage foreclosures when that law was amended during the pendency of an appeal. *Enfield Federal Savings & Loan Assn.* v. *Bissell,* supra, 573–74.

The finality of a trial court judgment is not directly affected by the fact that an appeal automatically stays the enforcement of a judgment. See Practice Book § 4046 (formerly § 3065). The stay does not vacate the judgment obtained by the successful litigant. It merely denies that party "the immediate fruits of his or her victory"; *Connolly* v. *Connolly,* 191 Conn. 468, 481, 464 A.2d 837 (1983); in order to protect the full and unhampered exercise of the right of appellate review. *Hartford National Bank & Trust Co.* v. *Tucker,* 181 Conn. 296, 298, 435 A.2d 350, cert. denied, 449 U.S. 956, 101 S. Ct. 363, 66 L. Ed. 2d 221 (1980). Correlatively, an order of execution, in the absence of a stay, does not moot the justiciability of a pending appeal. "If a judg-

ment has been satisfied before it is reversed . . . 'the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost; and the mode of proceeding to effect this object must be regulated according to circumstances.' *Bank of United States* v. *Bank of Washington,* 31 U.S. (6 Pet.) 8, 17, 8 L. Ed. 299 [1832]." *Reilly* v. *State,* 119 Conn. 217, 222–23, 175 A. 582 (1934); *Bock* v. *Meriden Trust & Safe Deposit Co.,* 135 Conn. 94, 95 n.1, 60 A.2d 918 (1948).

The finality of a judgment may, however, depend upon the outcome of the pending appeal. If the trial court's judgment is sustained, or the appeal dismissed, the final judgment ordinarily is that of the trial court. If, however, there is reversible error, the final judgment is that of the appellate court. *Varley* v. *Varley,* supra, 60–61, and 61 n.4; *Saunders* v. *Saunders,* supra.

Application of these principles to the circumstances of the present case demonstrates, beyond peradventure, that Funding never had, at any time, a final judgment that would have entitled it to levy execution to seize and sell assets belonging to Preisner or to Aetna. During the appeal of Funding's judgment, execution was precluded by the outstanding stay. After reversal of the judgment, execution was forbidden under *Reilly* v. *State,* supra. The ultimate rendering of a judgment on a directed verdict in favor of Preisner entirely foreclosed any inchoate rights of recovery by Funding on the initial judgment.

The question before us is to what extent Aetna, as an accommodation party guaranteeing Preisner's obligation to Funding, stands on a different footing. Despite Aetna's settlement with Funding, it could not assert common law rights of subrogation against Preisner, because, as subrogee, it would only have been substi-

tuted to the rights and remedies that Funding had against Preisner. *Home Owners' Loan Corporation* v. *Sears, Roebuck & Co.*, 123 Conn. 232, 238-39, 193 A. 769 (1937). Since no such rights and remedies have been established to date, there is as yet nothing to which Aetna could be subrogated. For similar reasons, Aetna had no common law right of reimbursement for a settlement made with full awareness that Preisner was actively asserting that he had no liability to Funding. See *In re V. Pangori & Sons, Inc.*, 53 Bankr. 711, 716, 717-22 (E.D. Mich. 1985); L. Simpson, Suretyship (1950) § 48, pp. 228-30. Aetna maintains, however, that its indemnification contract with Preisner provides it with a defense, as a matter of law, to Preisner's conversion action.

Aetna's argument has three components. Aetna maintains that it was entitled to foreclose on the secured collateral covered by its security agreement with Preisner because: (1) under the express terms of its indemnity agreement with Preisner, its rights became fixed when it became obligated to pay the Funding judgment; (2) the indemnity agreement gave it a right of subrogation; and (3) the indemnity agreement became enforceable when Preisner stipulated, in the Funding action, that a third party judgment would enter against him if Funding recovered a judgment against Aetna. We are unpersuaded.

Under the terms of the agency loan guarantee agreement, Preisner expressly agreed, in paragraph 4, "to indemnify Aetna if it becomes obligated to make any payment or sustains any loss as a result of the failure of the Agent [Preisner] to promptly pay the aforesaid notes when they become due without any extension of time of payment." The security interest that the loan guarantee provided for Aetna was intended to secure the payment of all "obligations and indebtedness, of whatever kind and whenever created, of the Agent

[Preisner] to Aetna described in paragraphs 4 or 5
hereof." In its first argument, Aetna reads these pro-
visions to require indemnification because it became
"obligated" to Funding by the trial court judgment in
the Funding action.

As we have already indicated, in this case Funding
itself had no enforceable judgment against either Aetna
or Preisner. The trial court judgment, which was origi-
nally stayed and ultimately reversed, cannot be said
to have "obligated" Aetna to make any payment. Aetna
has not argued that, absent the judgment, it would have
become obligated to pay the Preisner note simply
because Preisner refused to pay the note when it
became due. At oral argument, Aetna conceded that
it had not established a claim that it had sustained "any
loss" attributable to Preisner's default except insofar
as that loss was derived from the judgment.[3] Aetna's
unilateral withdrawal of its appeal in the Funding
action did not make that judgment final as against
Preisner when Preisner actively continued to pursue
the appeal to establish the merits of his defense against
Funding.

Aetna's second argument is that the indemnity pro-
vision of the loan guarantee gave it a right to subro-
gation regardless of Preisner's liability to Funding. It
relies on a provision of the Restatement of Judgments
governing the effect on an indemnitor of a judgment
against the indemnitee. Under the 2 Restatement (Sec-
ond), Judgments (1982) § 57, a person who has an obli-

[3] Aetna might, of course, have drafted either an indemnity agreement
or a security agreement that would specifically have defined additional
events of default. For example, Aetna might have stipulated that the loan
guarantee would be in default upon any nonpayment by Preisner, upon the
entry of any judgment against him, upon the deterioration in value of the
secured collateral, or even upon Aetna's deeming itself insecure. See Gen-
eral Statutes § 42a-1-208; 2 G. Gilmore, Security Interest in Personal Prop-
erty (1965) § 43.4, p. 1196.

gation to indemnify another is estopped from disputing the existence and extent of the indemnitee's liability to an injured person arising out of a judgment against the indemnitee, when the indemnitor was given notice of the action and an opportunity to assume or participate in its defense. The comment to that section suggests that, if the indemnitor assumes control of the defense of the action, he will then be "precluded from relitigating issues determined therein in a subsequent action concerning his obligation to indemnify." Id., comment a, p. 78. Nothing either in the black letter or the comment defines what constitutes the "judgment" that gives rise to estoppel. As the Reporter for the Restatement has indicated in his treatise, it would make little sense to accord preclusive effect to a judgment that has been reversed on appeal. See F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.4, p. 592. The parties have cited no case that would support such a proposition, and we have found none.

Third, Aetna contends that it acquired a right to indemnification when Preisner stipulated, in the Funding action, that a third party judgment would enter against him if Funding recovered a judgment against Aetna. That judgment became final, according to Aetna, when it withdrew its appeal after the settlement with Funding. After that withdrawal, it claims that only Preisner's appeal remained outstanding, and the only judgment that was set aside was that pertaining to Preisner's appeal. In this court's opinion in the Funding action, we noted, however, that Preisner had pursued his appeal both as defendant and as third party defendant. *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 638. We indicated, in a footnote, that we assumed that "our resolution of the issues arising pursuant to the underlying complaint [would] serve to resolve the appeal concerning the third party complaint." Id., 638–39 n.2. Furthermore, the judgment

that we set aside was a single judgment encompassing both the complaint and the third party complaint. In these circumstances, we would be loath to interpret Preisner's stipulation as binding upon Preisner, regardless of reversal of the Funding action. Aetna's position to the contrary is, in any case, undermined by subsequent proceedings initiated by Preisner to seek dismissal of Aetna's third party complaint after Preisner had secured a directed verdict against Funding. Although Aetna attempted to reserve its rights under the judgment that had been set aside, it did in fact withdraw the third party action. Having foregone the opportunity to litigate its interpretation of the stipulation, Aetna cannot now rely, as a matter of law, on its version of what the stipulation meant.

For these reasons, the trial court was in error in granting the defendants' motion for partial summary judgment. Preisner and his coplaintiff have not appealed the trial court's denial of their motion for partial summary judgment and that motion is therefore not before us.

## II

Preisner and his coplaintiff have also appealed the trial court's denial of their motion to amend their complaint to add a fifth count alleging noncompliance with statutory requirements for reasonable notice before disposition of secured collateral. General Statutes § 42a-9-504. The original complaint was filed on November 16, 1982, and the motion for amendment was filed on May 3, 1985, and denied on October 3, 1985. The amendment was addressed solely to Aetna, the party who undertook to sell the secured collateral, and not to Suzio, who purchased it. At the time the motion for amendment was filed, the motion for partial summary judgment in favor of Aetna had already been granted. Under those circumstances, it was not an abuse of the

trial court's discretion, when the motion was ruled upon at trial, to refuse to permit the amendment.[4] *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 303, 460 A.2d 488 (1983); *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980). Our holding should not be understood, however, to preclude reconsideration of the motion to amend by the trial court in light of the further proceedings that are now required by our decision setting aside the partial summary judgment in favor of Aetna.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

---

[4] The plaintiffs note that their motion for amendment was filed well in advance of the actual trial in this case, but nothing in the record demonstrates that their motion was pressed before that time.