SUFFIELD DEVELOPMENT ASSOCIATES LIMITED PARTNERSHIP *v.* NATIONAL LOAN INVESTORS, L.P.
(AC 20007)

Foti, Spear and Peters, Js.

---

Argued September 19—officially released November 28, 2000

*Richard P. Weinstein,* with whom was *Nathan A. Schatz,* for the appellant-appellee (plaintiff).

*Paul M. Geraghty,* for the appellee-appellant (defendant).

*Opinion*

PETERS, J. The dispositive issue in this civil appeal is the construction of a payment term in a stipulated judgment. The payment term limited monetary liability in this case to the proceeds of a judgment yet to be rendered in a pending case that would determine the liability of a third party to the putative payor. Specifically, the question is whether the right to recover such proceeds includes proceeds that resulted from a settlement of the third party action during the pendency of a retrial subsequent to appellate reversal of the original judgment against the third party. We agree with the trial court's resolution of this issue.

The plaintiff, Suffield Development Associates Limited Partnership, brought a declaratory judgment action to clarify its obligation to pay the defendant, National Loan Investors Limited Partnership, $200,000 from the settlement of its claims against Society for Savings (bank).[1] The defendant asserted its right to payment. After a trial, the court rendered judgment against the plaintiff, from which the plaintiff appeals. The defendant has filed a cross appeal challenging the court's calculation of the amount of its recovery.

The court's memorandum of decision and the record reveal the following undisputed facts. On December 17, 1996, the plaintiff and the defendant entered into a stipulated judgment[2] to settle a foreclosure action.[3] At

---

[1] Sometime during the proceedings, Bank of Boston succeeded the Society for Savings.

[2] Pursuant to paragraph 2 of that stipulated judgment, the defendant was to receive a deficiency judgment in the amount of $375,000, "which judgment shall be satisfied only by proceeds from a certain Lender Liability Judgment in favor of [the plaintiff] in a certain civil action known as *Suffield Development Associates, L. P.* v. *Society for Savings,* Docket No.: CV-94-0534196-S." In this "certain civil action," the plaintiff brought a two count complaint against the bank. The first count was brought on a breach of contract theory and the second count was brought on the theory of promissory estoppel.

[3] The stipulated judgment resulted in the settlement of three separate lawsuits and released all others, including the plaintiff's general partner and

that time, the plaintiff had succeeded at trial in a lender liability action against the bank, but the bank had filed an appeal that had not yet been resolved. Subsequently, on appeal, our Supreme Court reversed the judgment and remanded the case for a new trial on one issue. *Suffield Development Associates Ltd. Partnership* v. *Society for Savings*, 243 Conn. 832, 846, 708 A.2d 1361 (1998).

Before the commencement of the new trial, the plaintiff and the bank entered into a settlement of the lender liability case. Shortly thereafter, the defendant brought the present action asserting a claim of entitlement to a portion of the proceeds from the settlement in the lender liability action pursuant to the terms of the stipulated judgment entered into by the plaintiff and the defendant in the foreclosure action.

The plaintiff objected to the defendant's claim on the ground that the deficiency judgment in favor of the defendant could be satisfied only from the proceeds of a "certain Lender Liability Judgment" in a "certain civil action." According to the plaintiff, the decision of our Supreme Court reversing that "certain Lender Liability Judgment" had the effect of extinguishing that judgment in its entirety so that there no longer was any basis for any monetary recovery from the plaintiff.

The trial court in this case concluded, as the defendant had argued, that the proceeds from the settlement

all of the plaintiff's guarantors from any and all liabilities to the defendant. The term defendants, as defined in the stipulated judgment, included the plaintiff, the general partner and the guarantors of the plaintiff's debt obligations. Pursuant to the terms of the stipulated judgment, the parties agreed to enter into a strict foreclosure with a deficiency judgment on a sliding scale starting at the amount of $375,000.

In exchange for entering into the stipulated judgment, the defendant agreed not to pursue the guarantors or the general partner on the deficiency judgment. Furthermore, the defendant agreed to withdraw a separate action it had against the plaintiff and to release any and all garnishments or attachments of property obtained in connection with said separate action.

of the lender liability action pending retrial after reversal constituted proceeds from the "certain Lender Liability Judgment" described in the stipulated judgment. Accordingly, it rendered judgment ordering the plaintiff to pay $200,000 to the defendant. The plaintiff has appealed on the merits, and the defendant has cross appealed with respect to the amount of the judgment.

## I

## PLAINTIFF'S APPEAL

On appeal, the plaintiff's principal argument is that the court misconstrued the phrase "a certain Lender Liability Judgment" in the stipulated judgment. Because the plaintiff's appeal turns on the construction of documentary evidence of the terms of a stipulated judgment, which is a contract, our review of the court's judgment is plenary and its language is accorded its common meaning and usage. *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 356–57, 727 A.2d 1260 (1999).

The plaintiff makes two arguments to persuade us to overturn the court's construction of the phrase "certain Lender Liability Judgment" in the foreclosure action. The first is that the lender liability action was terminated not by judgment but by settlement and, therefore, the prerequisite judgment was not established. The second is that the lender liability action was terminated by our Supreme Court's reversal and that subsequent events fall outside of the "certain Lender Liability Judgment." We find no merit in either of these contentions.

The plaintiff's first argument cannot survive in light of its own concession, in its brief and at oral argument, that had the lender liability action been settled before the reversal of the judgment, the defendant would have been entitled to proceeds pursuant to the stipulated

judgment. We are not persuaded that a post-reversal settlement stands on a different footing.

In its principal argument, the plaintiff claims, in essence, that we should break the lender liability action into two parts, the judgment before disposition of the appeal to the Supreme Court, and the remand for retrial ordered by that court. It essentially argues that, upon reversal by our Supreme Court, the "certain Lender Liability Judgment" contemplated in the stipulated judgment was extinguished for two reasons.

First, the plaintiff argues that our Supreme Court's reversal of the judgment in the lender liability action extinguished the judgment contemplated by the parties to the foreclosure action because the retrial of the lender liability action, had it taken place, would have addressed a legal issue that previously had not been part of that action. At oral argument, the plaintiff's counsel conceded that the fact that the case was remanded on a previously undecided claim of promissory estoppel was not "where the action" was and, had our Supreme Court reversed the judgment on the basis of an evidentiary issue, he would still advance the same argument. Therefore, it did not matter that the lender liability settlement involved a cause of action based on promissory estoppel.

Second, the plaintiff argues, essentially, that our Supreme Court's reversal of the trial court's judgment in the lender liability action was a final judgment. Therefore, it maintains that the "certain Lender Liability Judgment" contemplated by the parties was extinguished, leaving the defendant with virtually nothing on which to premise its monetary claim.

Our Supreme Court has held that, if an appeal is pending and "there is reversible error, the final judgment is that of the appellate court." *Preisner* v. *Aetna Casualty & Surety Co.*, 203 Conn. 407, 415, 525 A.2d

83 (1987); see *Varley* v. *Varley*, 181 Conn. 58, 61 n.4, 434 A.2d 312 (1980); see also *Saunders* v. *Saunders*, 140 Conn. 140, 146, 98 A.2d 815 (1953). *Preisner* and the cases cited therein did not, however, involve circumstances in which the judgments of the trial court were reversed and the cases were remanded for new trials. In such a situation, because the parties' rights still may be affected by further proceedings, the judgment is not final. *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983).

We conclude, as did the trial court, that the more reasonable construction of the reference to a "certain Lender Liability Judgment" is that the parties intended to await the outcome of any further judicial action relating thereto. In our view, the use of the language "a certain Lender Liability Judgment" from "a certain civil action" was intended to identify the particular action to which the parties were referring in order to distinguish it from several other pending actions between the parties. Before and after the order for a new trial, that case was still the same case, based on the same complaint against the same party. Furthermore, the plaintiff has offered no reason to suppose that, in entering into the stipulated judgment, the defendant was bargaining for the possibility of a windfall in favor of the plaintiff.

We conclude, therefore, that the defendant is entitled to proceeds from the settlement that resolved the lender liability action before its retrial. On the plaintiff's appeal, the judgment is affirmed.

## II

## DEFENDANT'S CROSS APPEAL

On cross appeal, the defendant claims that, in construing the stipulated judgment, the court improperly (1) determined that the amount of proceeds from the

lender liability settlement should be reduced by the plaintiff's attorney's fees and (2) held the defendant responsible for the costs of the sheriff's execution against the bank instead of allowing the sheriff to recover his execution fees pursuant to General Statutes § 52-261 (6).[4] We decline to review the merits of either claim.

## A

### Net Proceeds

The defendant first claims that the trial court improperly determined that it was entitled to proceeds based only on the net amount received by the plaintiff in the settlement of the lender liability action. Specifically, the defendant claims that, because the court took attorney's fees into account when it determined the award to the plaintiff, it improperly reduced the amount the defendant was to receive under paragraph 3 of the stipulated judgment. We conclude that the record before us is inadequate for our review of this issue on its merits.

In rendering judgment for the defendant, the court awarded it only $200,000. The court arrived at this figure pursuant to paragraph 3 (b)[5] of the stipulated judgment. It concluded that section (b) controlled because, in its view, the proceeds actually received by the plaintiff, after taking attorney's fees into account, were less than $1,333,333.33. The defendant had argued to the contrary

[4] General Statutes § 52-261 provides in relevant part: "The following fees shall be allowed and paid . . . (6) for levying an execution, when the money is actually collected and paid over, or the debt secured by the officer to the acceptance of the creditor, ten per cent on the amount of the execution, provided the minimum fee for such execution shall be twenty dollars . . . ."

[5] Paragraph 3 provides in relevant part: The plaintiff and the defendant "agree that the above-referenced deficiency judgment . . . shall be satisfied only from proceeds of the Lender Liability Judgment received by the [plaintiff], as follows . . . b) Two Hundred Thousand ($200,000) Dollars from the Lender Liability Judgment, if the proceeds received fall between . . . ($200,000) . . . and . . . ($1,333,333.33) . . . ."

that because the lender liability settlement was in the amount of $1,500,000, pursuant to paragraph 3 (a) of the stipulated judgment, the defendant was entitled to 15 percent of $1,500,000, or $225,000.[6] The defendant renews this argument on appeal.

The plaintiff argues that the court correctly determined that the terms "proceeds received," as stated in paragraph 3, referred to the net proceeds, and, therefore, the defendant is entitled only to $200,000, pursuant to paragraph 3 (b) of the stipulated judgment. In paragraph 5 of the stipulated judgment,[7] counsel for the plaintiff subordinated his attorney's liens up to the first $200,000 in proceeds from the lender liability action. Because paragraph 5 applies only to the first $200,000 in proceeds, where the gross proceeds exceed $200,000, according to the plaintiff, the court must take attorney's fees into account before the defendant's recovery is determined.

The defendant argues that because this court is required to read a contract as a whole, giving all of its provisions the proper contextual meaning and effect; *Regency Savings Bank* v. *Westmark Partners*, 59 Conn. App. 160, 165–66, 756 A.2d 299 (2000); see also *Enfield Pizza Palace, Inc.* v. *Ins. Co. of Greater New York*, 59 Conn. App. 69, 75–76, 755 A.2d 931 (2000); we must focus on paragraphs 2 and 3, together with paragraph

---

[6] Paragraph 3 provides in relevant part: The plaintiff and the defendant "agree that the above-referenced deficiency judgment . . . shall be satisfied only from proceeds of the Lender Liability Judgment received by the [the plaintiff], as follows: a) Fifteen percent (15%) of the Lender Liability Judgment . . . if the proceeds received are equal to or exceed . . . ($1,333,333.33) . . . ."

[7] Paragraph 5 of the stipulated judgment provides: "Richard P. Weinstein hereby consents to and does hereby subordinate any and all attorney liens which he or his law firm may have against the above-referenced Lender Liability Judgment in favor of [the defendant] with respect to the first Two Hundred Thousand ($200,000.00) Dollars in proceeds of said Lender Liability Judgment."

23. In paragraphs 2 and 3 the parties stipulated that the plaintiff was to satisfy the judgment from the foreclosure action with proceeds received from the lender liability judgment. In paragraph 23 of the stipulated judgment, the parties agreed on how they would distribute any *proceeds* the defendant would receive if it sold the premises after June 30, 1997.[8] The defendant argues that because the parties chose to use the terms "net amount" in paragraph 23, it is logical to conclude that failure to use such language in paragraphs 2 and 3, means that the parties did not intend the term "proceeds" to have the same meaning.[9]

The court's memorandum of decision is uninformative about the reasoning behind its award of $200,000. There is nothing in the printed record or the court file to indicate that the defendant asked the court to reconsider, reargue, articulate or the like, its monetary award in light of its argument on appeal.

For this court to determine how the trial court arrived at $200,000, without the benefit of an explanation by the court, would be speculative. That is not our role.

[8] In describing the distribution, the parties used a sliding scale similar to that used in paragraph 3; however, paragraph 23 specifically uses the term "net amount." It states: The defendant "agrees that if it sells the Premises after June 30, 1997 for a 'net amount' in excess of . . . ($1,500,000) . . . then [the defendant] will receive . . . (25%) of the net amount in excess of . . . ($1,500,000) . . . and [the plaintiff] shall receive . . . (75%) . . . of the net amount in excess of . . . ($1,500,000)." This paragraph goes on to define some of its terms: "For purposes of this Stipulation, [the defendant] and [the plaintiff] agree that the term 'net amount in excess of . . . ($1,500,000) . . .' shall mean the proceeds . . . from the sale of said Premises, after payment of the sum of . . . ($1,500,000) . . . to [the defendant], together with the payment and/or reimbursement of . . . *legal fees* . . . ." (Emphasis added.)

[9] Although the terms "net amount" requires the total amount received by the defendant to be reduced by more than just legal fees, because the parties specifically defined the phrase "net amount in excess of $1,500,000" to include the payment of legal fees, it is logical to conclude that, if they intended the defendant to receive net proceeds from the lender liability settlement, they would have specifically stated that.

*State* v. *Collic*, 55 Conn. App. 196, 209, 738 A.2d 1133 (1999). It is the cross appellant's burden to provide an adequate record for review. Practice Book § 60-5; *Cadlerock Properties Joint Venture, L. P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 674, 757 A.2d 1 (2000). We therefore decline to review this issue.

B

Execution Costs

The defendant's second claim on its cross appeal is that the court improperly found that the defendant was responsible for the payment of execution costs from the proceeds due it. Again, we conclude that the record is inadequate for our review.

In its memorandum of decision, the trial court found that the "execution costs and statutory interest claimed by [the defendant did] not apply to paragraph 3 (b) [of the stipulated judgment] and, therefore, [did] not award them." The defendant filed a motion for further articulation,[10] asking the court to explain why it denied the defendant its statutory right to have the sheriff's fees paid. The court denied the defendant's motion. The defendant did not file a motion for review.

In its brief, the defendant renews its contention that the court's decision was unclear "as to whether the fact that the parties entered into a written stipulation precludes [the defendant] from collecting . . . execution fees through a bill of costs . . . ." It argues that if that was the court's reasoning, the court's decision was improper.

"[W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and

---

[10] There was no evidence that the defendant first filed a motion for articulation.

indeed under appropriate circumstances he must, seek immediate appeal . . . to this court via the motion for review." *Barnes* v. *Barnes*, 190 Conn. 491, 493 n.2, 460 A.2d 1302 (1983). Here, the defendant failed to file a motion for review. It is the appellant's burden to provide an adequate record for review. Practice Book § 60-5; *Cadlerock Properties Joint Venture, L. P.* v. *Commissioner of Environmental Protection*, supra, 253 Conn. 674. Because the record is inadequate, we decline to review the merits of this issue. We therefore affirm the judgment with respect to the cross appeal.

The judgment is affirmed.

In this opinion the other judges concurred.