SUFFIELD DEVELOPMENT ASSOCIATES LIMITED
PARTNERSHIP *v.* NATIONAL LOAN
INVESTORS, L.P., ET AL.
(AC 21253)

Foti, Mihalakos and Peters, Js.

Argued April 2—officially released July 10, 2001

*Richard P. Weinstein,* with whom, on the brief, was *Nathan A. Schatz,* for the appellant (plaintiff).

*Kerry R. Callahan,* with whom, on the brief, were *Donald C. Mahoney* and *Drew S. Graham,* for the appellees (defendant Berman and Sable et al.).

*Opinion*

FOTI, J. The plaintiff, Suffield Development Associates Limited Partnership, appeals from the judgment of the trial court in favor of the defendants, National Loan Investors, L.P. (National Loan),[1] the law firm of Berman and Sable, and attorney James W. Oliver, rendered after the court granted the defendants' motions to strike the plaintiff's original and amended complaints.[2] On appeal, the plaintiff claims that the trial court improperly granted the motions to strike (1) the first count of the complaint, which alleged abuse of process based on the defendants' misrepresentations to the Superior Court when the defendants obtained and carried out an execution on a judgment in an amount in excess of that authorized by the judgment, (2) the second count of the complaint, which alleged a cause of action based on the defendants' fraudulent misrepresentations to the Superior Court regarding their entitlement to an execution on a judgment and the amount thereof, thereby causing damage to the plaintiff, (3) the third count of

---

[1] On December 18, 2000, the plaintiff withdrew its appeal against National Loan, and, thus, the only remaining defendants are Berman and Sable, and attorney James W. Oliver.

[2] After the court granted the defendants' motions to strike all four counts the plaintiff's original complaint, the plaintiff filed a timely amended complaint. See Practice Book § 10-44. In its amended complaint, the plaintiff sought to preserve its appellate rights as to the first and second counts, and thus it did not replead those counts. In its amended complaint, the plaintiff did, however, allege additional facts relating to the third and fourth counts.

the amended complaint, which alleged tortious interference with a settlement agreement between the plaintiff and BankBoston, thereby depriving the plaintiff of its right to the enjoyment and the benefit of that contract, (4) the fourth count of the amended complaint, which alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., based on the defendants' misrepresentations and fraud on the court when the defendants obtained and carried out an execution on a judgment in an amount in excess of that authorized by the judgment and (5) the prayer for relief, which sought common-law punitive and exemplary damages, statutory punitive damages and attorney's fees. We affirm the judgment of the trial court.

The following facts as alleged in the plaintiff's original and amended complaints are necessary for our resolution of this appeal. The plaintiff entered into a stipulated judgment with National Loan. The law firm of Berman and Sable and attorney James W. Oliver represented National Loan.

On April 22, 1999, the plaintiff resolved a dispute with Society for Savings when it settled with BankBoston, the successor to Society for Savings, by agreeing to pay Richard Weinstein, Trustee, the sum of $1.5 million in settlement of the plaintiff's claims. The stipulation between the plaintiff and National Loan provided, inter alia, that National Loan would be given a sum or percentage of the proceeds received by the plaintiff from a "certain lender liability judgment" against Society for Savings. That judgment, however, was reversed by our Supreme Court; *Suffield Development Associates Ltd. Partnership* v. *Society for Savings*, 243 Conn. 832, 846, 708 A.2d 1361 (1998); and a new trial was ordered on an alternate cause of action.

After reaching a settlement with BankBoston, the plaintiff notified National Loan's counsel of the settle-

ment. The plaintiff further expressed to National Loan's counsel that under the terms of its stipulation with National Loan, because there were no proceeds from the "certain lender liability judgment," no moneys were due and owing. Nevertheless, the plaintiff offered to escrow an amount of money until a judicial determination could be made as to whether the stipulation applied to the settlement.

The defendants demanded payment and threatened to undo the stipulation if payment was not made, even though the dispute existed. Further, the plaintiff alleged that, in an effort to pressure the plaintiff, the defendant attorneys, acting on behalf of National Loan and on their own behalf, wrongfully applied to the Superior Court for an execution of judgment in an attempt to seize part of the settlement proceeds from Bank-Boston.[3]

The execution application allegedly misrepresented National Loan's right as a matter of law to the amounts due and further misrepresented the amount of any such claim. The complaint further alleged that the defendants wrongfully directed a sheriff to execute on the settlement and that the defendants have continued to attempt to enforce the execution, fully aware that the application for execution was false, that the amount of the execution was inflated and that National Loan's right to the execution was disputed. Finally, the defendants' actions were claimed to be malicious.

---

[3] After the defendants applied for the execution, the plaintiff brought a declaratory judgment action against National Loan, seeking a determination as to whether the stipulation with National Loan extended to the proceeds of the plaintiff's settlement with BankBoston. The trial court found that the settlement amount constituted proceeds for purposes of the stipulation and that, therefore, the defendant was entitled to payment of $200,000 from the settlement proceeds. This court affirmed the trial court's judgment. See *Suffield Development Associated Ltd. Partnership* v. *National Loan Investors, L.P.*, 60 Conn. App. 842, 763 A.2d 1049 (2000).

The first count of the complaint alleged a cause of action for abuse of process. The second count alleged fraud. The third count of the amended complaint alleged tortious interference with the contractual rights of the plaintiff. The fourth count of the amended complaint alleged a violation of CUTPA. Additional facts will be provided as needed.

"We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [defendants' motion] is plenary. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232–33, 680 A.2d 127 (1996) [cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997)]. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Bohan* v. *Last*, 236 Conn. 670, 674, 674 A.2d 839 (1996); see also *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108–109, 491 A.2d 368 (1985). Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996). Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. *Clohessy* v. *Bachelor*, 237 Conn. 31, 33 n.4, 675 A.2d 852 (1996). . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . *Amodio* v. *Cunningham*, 182 Conn. 80, 83, 438 A.2d 6 (1980). Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically. . . . *Edwards* v. *Tardif*, 240 Conn. 610, 620, 692 A.2d 1266 (1997)." (Internal quota-

tion marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 260–61, 765 A.2d 505 (2001).

## I

The plaintiff first claims that the court improperly granted the motions to strike the first count of its original complaint because that count alleged sufficient facts to support a cause of action for abuse of process. Specifically, the plaintiff argues that the defendants made misrepresentations to the Superior Court when they obtained and carried out the execution in an amount in excess of that authorized by the judgment. Thus, the plaintiff argues that the defendants misused process in an attempt to seize property in excess of that to which they were entitled. In response, the defendants argue that the first count of the complaint fails to state a cause of action for abuse of process because it does not allege that the defendants used the legal process in a manner for which it was not intended. We agree with the defendants.

"An action for abuse of process lies against any person using 'a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.' *Varga* v. *Pareles*, [137 Conn. 663, 667, 81 A.2d 112 (1951)]; *Schaefer* v. *O. K. Tool Co.*, 110 Conn. 528, 532–33, 148 A. 330 (1930). Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of 'a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . .' Comment b to § 682 explains that the addition of 'primarily' is meant to exclude liability 'when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.' See

also 1 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 4.9; R. Mallen & V. Levit, Legal Malpractice (2d Ed. 1981) § 61; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 121. . . .

"[A] cause of action [for abuse of process arising out of an attorney's professional representation of his or her clients' interests] must be reconciled with our responsibility to assure unfettered access to our courts. Because litigants cannot have such access without being assured of the unrestricted and undivided loyalty of their own attorneys, we have afforded to attorneys, as officers of the court, absolute immunity from liability for allegedly defamatory communications in the course of judicial proceedings. *Petyan* v. *Ellis*, 200 Conn. 243, 245–46, 510 A.2d 1337 (1986); see 2 F. Harper, F. James & O. Gray, supra, § 5.22, esp. pp. 191–92; 3 Restatement (Second), Torts § 586 (1977); R. Mallen & V. Levit, supra, § 65; W. Prosser & W. Keeton, supra, § 114. For other causes of action, however, the exigencies of the adversary system have not been deemed to require absolute immunity for attorneys. We have assumed, without discussion, that an attorney may be sued in an action for vexatious litigation, arguably because that cause of action has built-in restraints that minimize the risk of inappropriate litigation. *Vandersluis* v. *Weil*, [176 Conn. 353, 361, 407 A.2d 982 (1978)]. Other courts have held that immunity from libel actions should not carry over to provide an attorney with an absolute defense to liability for abuse of process. See, e.g., *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1169, 728 P.2d 1202, 232 Cal. Rptr. 567 (1986); *Hoppe* v. *Klapperich*, 224 Minn. 224, 243, 28 N.W.2d 780 (1947); *Peerman* v. *Sidicane*, 605 S.W.2d 242, 245 (Tenn. App. 1980). Accordingly, we conclude that an attorney may be sued for misconduct by those who have sustained a special injury because of an unauthorized use of legal process. In permitting such a cause

of action, we must, however, take care 'not to adopt rules which will have a chilling and inhibitory effect on would-be litigants of justiciable issues.' *Morowitz* v. *Marvel,* 423 A.2d 196, 197–98 (D.C. App. 1980); *Brody* v. *Ruby,* 267 N.W.2d 902, 905 (Iowa 1978); *Spencer* v. *Burglass,* 337 So. 2d 596, 601 (La. App. 1976), writ of review denied, 340 So. 2d 990 (La. 1977).

"State courts in other jurisdictions have undertaken the process of balancing these competing interests, principally in cases arising out of medical malpractice litigation. The factual setting of these cases is a suit by a physician seeking vindication from an attorney after a malpractice claim brought on behalf of the physician's patient has ended in withdrawal, dismissal or settlement. Courts have struggled to determine under what circumstances such a complaint states a cause of action for abuse of process. The existing case law demonstrates that there is no bright line that clearly distinguishes between the ends ordinarily associated with litigation and the ulterior purpose that the tort of abuse of process is intended to sanction. Much turns on the specificity of the pleadings. In many of the cases, the complaints have alleged generally that a physician has incurred costs to defend against the underlying malpractice suit, or that the malpractice suit has injured his professional reputation, or that the malpractice suit was initiated in the hopes of procuring a favorable settlement. Ruling in favor of the attorney defendants, courts have held such complaints to be legally insufficient because they do not allege conduct showing the use of process to accomplish a purpose for which it was not designed. *Morowitz* v. *Marvel,* supra [423 A.2d 197–98]; *Brody* v. *Ruby,* supra, [267 N.W.2d] 905–906; *Friedman* v. *Dozorc,* 412 Mich. 1, 30–31, 312 N.W.2d 585 (1981); *Drago* v. *Buonagurio,* 61 App. Div. 2d 282, 285, 402 N.Y.S.2d 250, rev'd on other grounds, 46 N.Y.2d 778, 386 N.E.2d 821, 413 N.Y.S.2d 910 (1978); *Martin*

v. *Trevino,* 578 S.W.2d 763, 769 (Tex. Civ. App. 1978). When, however, such allegations are buttressed by specific claims of egregious misconduct, such as utter failure to investigate the validity of the underlying action, or unwarranted pursuit of inappropriate motions, some courts have sustained liability for abuse of process. *Nienstedt* v. *Wetzel,* 133 Ariz. 348, 353–54, 651 P.2d 876 (1982); *Bull* v. *McCuskey,* 96 Nev. 706, 709, 615 P.2d 957 (1980); *Peerman* v. *Sidicane,* supra, [605 S.W.2d] 243–45; see S. Birnbaum, 'Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions,' 45 Fordham L. Rev. 1003, 1014–20, 1033–42 (1977); note, 'Abuse of Process,' 33 S.C.L. Rev. 331 (1981).

"Accordingly . . . although attorneys have a duty to their clients and to the judicial system not to pursue litigation that is utterly groundless, that duty does not give rise to a third party action for abuse of process unless the third party can point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation. Any other rule would ineluctably interfere with the attorney's primary duty of robust representation of the interests of his or her client." (Emphasis in original.) *Mozzochi* v. *Beck,* 204 Conn. 490, 494–97, 529 A.2d 171 (1987).

Here, the complaint fails to allege misconduct intended to cause injury that is outside the normal contemplation of private litigation. The complaint alleged that the defendants were seeking to enforce the terms of a judgment. The plaintiff's complaint does not allege any facts that could establish that the defendants used the process in an improper manner or to accomplish a purpose for which it was not designed. Accordingly, we conclude that the court properly granted the motions to strike the first count of the plaintiff's complaint.

## II

The plaintiff next claims that the court improperly struck the second count of the complaint, which alleged

a cause of action for fraud. Specifically, the plaintiff argues that the second count was legally sufficient because it alleged that the defendants' misrepresentations to the court and its officers were relied on by the court and its officers to the plaintiff's detriment. In response, the defendants argue that there is no authority in this state to support a cause of action for fraud where the basis of the action is "fraud upon the court." We agree with the defendants.

"The essential elements of an action in common law fraud, as we have repeatedly held, are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. *Billington* v. *Billington*, 220 Conn. 212, 217, 595 A.2d 1377 (1991); *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 329, 593 A.2d 478 (1991); *Maturo* v. *Gerard*, 196 Conn. 584, 587, 494 A.2d 1199 (1985). The party asserting such a cause of action must prove the existence of the first three of these elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as 'clear and satisfactory' or 'clear, precise and unequivocal.' *Rego* v. *Connecticut Ins. Placement Facility*, 219 Conn. 339, 343, 593 A.2d 491 (1991); *Kilduff* v. *Adams, Inc.*, supra, 327." *Barbara Weisman, Trustee* v. *Kaspar*, 233 Conn. 531, 539–40, 661 A.2d 530 (1995).

Here, the plaintiff's complaint failed to allege a legally sufficient claim for common-law fraud. The plaintiff's claims fail for two reasons. First, as the plaintiff concedes, the statements allegedly made by the defendants were not made to induce the plaintiff to rely on them. Indeed, the complaint alleges that *the court and its officers* relied on the defendants' statements. Second, the complaint is devoid of any allegations that the plain-

tiff acted on the defendants' false representations to its injury. Therefore, we conclude that the court correctly held that the second count of the plaintiff's complaint failed to state a legally sufficient claim for common-law fraud.

## III

The plaintiff next claims that the court improperly granted the motions to strike the third count[4] of its amended complaint, which purported to state a cause of action for tortious interference with a contract. We disagree.

The third count of the plaintiff's amended complaint alleged that the defendants knew about its contractual relationship with BankBoston, which entitled the plaintiff to settlement proceeds. The amended complaint further alleged that the defendants intentionally interfered with that contractual relationship by seeking an execution of the stipulated judgment in an amount far in excess of that to which they were entitled. Thus, the amended complaint alleged that, as a result of the defendants' actions, the plaintiff has incurred actual loss, including, but not limited to, the costs of litigating

---

[4] The plaintiff reasserted paragraphs one through thirteen of the third count of its original complaint in its amended complaint and added the following allegations:

"14. The defendants were aware of the plaintiff's contractual relationship with BankBoston which entitled the plaintiff to the settlement proceeds.

"15. The defendants intentionally interfered with that contractual relationship by seeking execution upon said settlement obligation in an amount far in excess of that to which they were entitled.

"16. As a result of the defendants' conduct, the plaintiff has incurred actual loss, including but not limited to the cost of litigating the validity of the bank execution sought by the defendants and the cost of seeking a declaratory judgment as to the defendants' entitlement to the settlement proceeds.

"17. The actions of the defendants constitute a tortious interference with the contractual rights of the plaintiff to settlement funds from BankBoston, causing the plaintiff to not be able to realize the full benefit of its contract with BankBoston, all to the plaintiff's actual and special loss and damage."

the validity of the bank execution and seeking a declaratory judgment as to the parties' respective rights to the settlement proceeds. Finally, the third count of the amended complaint asserted that the defendants' actions constituted a tortious interference with the contractual rights of the plaintiff to settlement funds from BankBoston, thereby depriving the plaintiff of the full benefit of its contract with BankBoston.

"It is well established that the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss. *Solomon* v. *Aberman*, 196 Conn. 359, 364, 493 A.2d 193 (1985); *Herman* v. *Endriss*, 187 Conn. 374, 377, 446 A.2d 9 (1982); *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.*, 169 Conn. 407, 415, 363 A.2d 86 (1975)." *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 27, 761 A.2d 1268 (2000).

"An action for tortious interference with a business expectancy is well established in Connecticut. The plaintiff need not prove that the defendant caused the breach of an actual contract; proof of interference with even an unenforceable promise is enough. . . . A cause of action for tortious interference with a business expectancy requires proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . *Jones* v. *O'Connell*, 189 Conn. 648, 660, 458 A.2d 355 (1983). It is also true, however, that not every act that disturbs a contract or business expectancy is actionable. *Blake* v. *Levy*, 191 Conn. 257, 260, 464 A.2d 52 (1983). A defendant is guilty of tortious interference if he has engaged in improper conduct. Id., 261; see 4 Restatement (Second), Torts §§ 766, 766B, 767 (1979).

[T]he plaintiff [is required] to plead and prove at least some improper motive or improper means. *Kakadelis* v. *DeFabritis*, 191 Conn. 276, 279, 464 A.2d 57 (1983); *Blake* v. *Levy*, supra, 262. . . .

"Stated simply, to substantiate a claim of tortious interference with a business expectancy, there must be evidence that the interference resulted from the defendant's commission of a tort. . . . *Golembeski* v. *Metichewan Grange No. 190*, 20 Conn. App. 699, 702–703, 569 A.2d 1157, cert. denied, 214 Conn. 809, 573 A.2d 320 (1990)." (Internal quotation marks omitted.) *Biro* v. *Hirsch*, 62 Conn. App. 11, 21–22, 771 A.2d 129, cert. denied, 256 Conn. 908, 772 A.2d 601 (2001).

In the present case, the plaintiff's amended complaint failed to state a cause of action for tortious interference with contractual relations because it did not allege any facts that support its theory that the defendants tortiously interfered with the plaintiff's contract with BankBoston. Moreover, the plaintiff failed to allege any loss other than the costs associated with proving that it is entitled to the money that it received from Bank-Boston. The plaintiff simply asserted a legal conclusion that the defendants' actions interfered with its contract with BankBoston. The plaintiff's legal conclusion that the defendants interfered with its ability to realize the full benefit of its contract with BankBoston is insufficient to support its cause of action for tortious interference. In other words, the plaintiff is essentially complaining that it is not able to keep all of the money that it thought that it was going to be able to keep from its contract with BankBoston due to the defendants' actions in executing on the stipulated judgment proceeds that the plaintiff had received. Although this may have harmed the plaintiff financially, it does not amount to a tortious interference with contractual relations. Indeed, "it is well-settled that the tort of interference with contractual relations only lies when a third party

adversely affects the contractual relations of two *other* parties." (Emphasis in original; internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 168, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). Accordingly, we conclude that the court properly granted the motions to strike the third count of the plaintiff's amended complaint, as it fails to state a claim on which relief can be granted.

## IV

The plaintiff next claims that the court improperly struck the fourth count[5] of its amended complaint,

---

[5] The plaintiff added the following additional allegations to the fourth count of its amended complaint:

"14. The actions of the defendants constitute an abuse of process, causing damages to the plaintiff herein.

"15. The actions taken by the defendants in concert misrepresented the status of the stipulation to the Court and its officers, and the use of the execution secured thereby constituted a further misrepresentation to the Court and its officers, and the continued attempt to enforce said execution further continues the wrongful actions of the defendants herein, all of which constitute a fraud upon the Court, resulting in damages to the plaintiff herein.

"16. The defendants were aware of the plaintiff's contractual relationship with BankBoston which entitled the plaintiff to the settlement proceeds.

"17. The defendants intentionally interfered with that contractual relationship by seeking execution upon said settlement obligation in an amount far in excess of that to which they were entitled.

"18. As a result of the defendants' conduct, the plaintiff has incurred actual loss, including but not limited to the cost of litigating the validity of the bank execution sought by the defendants and the cost of seeking a declaratory judgment as to the defendants' entitlement to the settlement proceeds.

"19. The actions of the defendants constitute a tortious interference with the contractual rights of the plaintiff to settlement funds from BankBoston, causing the plaintiff to not be able to realize the full benefit of its contract with BankBoston, all to the plaintiff's actual and special loss and damage.

"20. At all times relevant hereto, and in undertaking the acts and conduct referenced in the preceding paragraphs, the defendants were engaged in the conduct of a trade or commerce.

"21. At all times relevant hereto, the defendants acted in an immoral, oppressive, unethical, unscrupulous manner, and caused substantial injury to consumers, competitors and other businessmen, in the following respects:

"a. the defendants intentionally obtained and used a bank execution in

which alleged a violation of CUTPA. The plaintiff claims that the defendants violated CUTPA in obtaining and using a bank execution in an amount far in excess of that to which they were entitled, in making material misrepresentations of fact to the Superior Court to obtain the bank execution and by intentionally and maliciously interfering with the contractual relationship between the plaintiff and BankBoston. In response, the defendants argue that the court properly granted the motions to strike the fourth count of the amended complaint because it is well settled law in Connecticut that a party may not sue his opponent's attorney under CUTPA. We agree with the defendants.

Our Supreme Court "has stated that, in general, CUTPA applies to the conduct of attorneys. *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 521, 461 A.2d 938 (1983). The statute's regulation of the conduct of any trade or commerce does not totally exclude all conduct of the profession of law. . . . Id. Nevertheless, we have declined to hold that every provision of CUTPA permits regulation of every aspect of the practice of law . . . . Id., 520. We have stated, instead, that, only the entrepreneurial aspects of the practice of law are covered by CUTPA. *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 34, 699 A.2d 964 (1997)." (Internal quotation marks omitted.) *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 79, 717 A.2d 724 (1998). "The noncommercial aspects of lawyering—that is, the repre-

an amount far in excess of that to which they were entitled;

"b. the defendants made material misrepresentations of fact to the Court which were relied upon by the Court and its officers in order to obtain a bank execution in an amount far in excess of that to which they were entitled;

"c. the defendants intentionally and maliciously interfered with the performance of contractual obligations between the plaintiff and BankBoston, all of which conduct violated the Connecticut Unfair Trade Practices Act ('CUTPA') C.G.S. § 42-110a, et seq., as made and provided, resulting in ascertainable losses to the plaintiff."

sentation of the client in a legal capacity—should be excluded for public policy reasons." (Internal quotation marks omitted.) *Haynes* v. *Yale-New Haven Hospital*, supra, 35.

Here, the allegations in the fourth count of the amended complaint seek to impose liability under CUTPA on the defendant attorneys on the basis of their representation of their client, National Loan. We conclude that the allegations of the complaint relate to the noncommercial practice of law by the defendants, and, thus, there could be no liability on the part of the defendants for violating CUTPA. See *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 729, 627 A.2d 374 (1993). Accordingly, we conclude that the court properly struck the fourth count of the amended complaint.

V

Finally, the plaintiff claims that the court improperly granted the motions to strike its prayer for relief, which sought common-law punitive and exemplary damages, as well as statutory punitive damages and attorney's fees. Because we conclude that the court properly struck each count of the plaintiff's complaint, we need not address whether the court properly struck the plaintiff's prayer for relief.

The judgment is affirmed.

In this opinion the other judges concurred.