******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HEALTH BODY WORLD SUPPLY, INC.,
## ET AL. *v.* REED WANG
## (SC 21051)

McDonald, D'Auria, Ecker, Alexander and Dannehy, Js.

*Syllabus*

The plaintiffs, H Co. and its insurer, brought an action for contribution against the defendant physician, W, pursuant to the comparative responsibility provisions (§ 52-572o) of the Connecticut Product Liability Act (§ 52-572m et seq.). The plaintiffs filed their contribution action in May, 2022, after they paid in full damages awarded pursuant to a judgment rendered in the underlying action brought by K, who had been injured when a heat lamp manufactured by H Co. made contact with her foot during an acupuncture session performed by W. In the underlying action, K originally sought to recover damages from W for his alleged medical malpractice. Thereafter, W filed a third-party complaint against H Co. sounding in product liability, and K then filed a complaint directly against H Co., also sounding in product liability. In response to W's and K's complaints, H Co. raised several special defenses, including that K and W each bore comparative responsibility for K's injuries and that, if H Co. were to be found liable for K's damages, it was entitled to contribution from W pursuant to § 52-572o. Before the case was submitted to the jury, W withdrew his third-party complaint against H Co. The jury subsequently returned a verdict for K, finding that H Co. was 80 percent responsible and W was 20 percent responsible for K's damages. In accordance with the verdict, judgment was rendered in the underlying action in January, 2019. Thereafter, the Appellate Court reversed that judgment in part, concluding that the medical malpractice claim against W should have been dismissed for lack of personal jurisdiction, but affirmed the portion of the judgment relating to K's product liability claim. This court subsequently denied H Co.'s petition for certification to appeal in November, 2021. In their contribution action, the plaintiffs sought to recover 20 percent of the amount paid to K in satisfaction of the underlying judgment. The trial court granted the plaintiffs' motion for summary judgment and rendered judgment in their favor, and W appealed. W claimed that the plaintiffs were barred from bringing a contribution action against him because he was not a "party" to the underlying action for purposes of § 52-572o and that the plaintiffs' contribution action was untimely because it was brought more than one year after the judgment in the underlying action became final. *Held*:

There was no merit to W's claim that the plaintiffs were barred from bringing a contribution action against him because he was not a party to the underlying action who was subject to the comparative responsibility provisions of § 52-572o.

Contrary to W's argument that the references in § 52-572o (b) through (d), providing for the apportionment of damages between each "party" according to each party's respective degree of responsibility, include only those named as defendants in connection with a product liability claim, the only reasonable construction of the statutory language was that the term "party" includes all defendants in an action involving a product liability claim, regardless of whether those persons or entities are product sellers named as defendants to the product liability claim.

Accordingly, in a hybrid action involving both claims arising out of the Connecticut Product Liability Act and other claims not sounding in product liability, in which the harm is indivisible, an adjudication of comparative responsibility is proper with respect to every party to the action, and the assessment of comparative responsibility in the underlying action in the present case was proper because K asserted a product liability claim against H Co. and a medical malpractice claim against W for the same indivisible harm.

Contrary to W's claim, the fact that the Appellate Court reversed the judgment in the underlying action with respect to K's medical malpractice claim against W did not mean that W was not a party subject to the comparative responsibility provisions of § 52-572o.

Although the Appellate Court reversed the portion of the underlying judgment determining W's liability with respect to the medical malpractice claim, it affirmed the judgment in all other respects, including with respect to the jury's determination that W was 20 percent responsible for K's total damages, made in connection with the comparative responsibility claim that H Co. raised in its special defense to K's product liability claim.

Accordingly, the court in the underlying action had jurisdiction over W to determine his comparative responsibility when judgment was rendered, both W and H Co. were subject to the adjudication of comparative responsibility, and they both were bound by that portion of the judgment that was not reversed on appeal.

The plaintiffs' contribution action was timely, as it was filed action within one year of all appellate proceedings in the underlying action becoming final. Pursuant to § 52-572o (e), "[i]f a judgment has been rendered" in an underlying action, any independent action for contribution "must be brought within one year after the judgment becomes final," and the only plausible construction of that language was that a "judgment becomes final" for purposes of triggering the statute of limitations upon the termination of all appellate proceedings, such that the liability of the parties is absolutely certain.

The judgment in the underlying action became final in November, 2021, ten days after this court denied H Co.'s petition for certification to appeal, and,

because the plaintiffs filed their contribution action against W in May, 2022, that action was timely.

Argued January 31—officially released September 9, 2025

*Procedural History*

Action for contribution, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Menon, J.*, denied the defendant's motion for summary judgment, granted the plaintiffs' motion for summary judgment and rendered judgment thereon, from which the defendant appealed to the Appellate Court; thereafter, the court, *Menon, J.*, entered an order approving the parties' stipulated supplemental judgment, and the defendant amended his appeal; subsequently, the appeal was transferred to this court. *Affirmed.*

*Wesley W. Horton*, with whom were *Karen L. Dowd, Mary Alice Moore Leonhardt* and, on the brief, *Kenneth J. Bartschi* and *Michael A. Lanza*, for the appellant (defendant).

*Thomas A. Plotkin*, with whom, on the brief, was *Paul D. Meade*, for the appellees (plaintiffs).

*Opinion*

ECKER, J. This appeal requires us to resolve two previously unexamined issues regarding the proper construction and operation of General Statutes § 52-572o, which is the statute governing comparative responsibility and actions for contribution under the Connecticut Product Liability Act (CPLA), General Statutes § 52-572m et seq. The plaintiffs, Health Body World Supply, Inc. (HBWS), and its insurance carrier, Landmark American Insurance Company (Landmark),[1] brought this action for contribution against the defendant, Reed Wang, pursuant to § 52-572o (e) after paying $1.2 million

---

[1] We refer to HBWS and Landmark collectively as the plaintiffs and individually by name when appropriate.

to Judith Kissel in full satisfaction of the judgment in the underlying matter of *Kissel* v. *Center for Women's Health, P.C.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FST-CV-12-6013562-S (January 3, 2019) (Kissel action), rev'd in part, 205 Conn. App. 394, 258 A.3d 677, cert. granted, 339 Conn. 916, 262 A.3d 139 (2021), and cert. granted, 339 Conn. 917, 262 A.3d 138 (2021) (appeals withdrawn January 11, 2022). The jury in the Kissel action assigned 80 percent of the responsibility for Kissel's damages to HBWS and 20 percent of the responsibility to Wang. In the present action, HBWS seeks to recover from Wang his 20 percent share of the amount paid, including applicable interest and costs. The trial court rendered judgment in favor of HBWS.

On appeal, Wang renews his arguments, unsuccessful in the trial court, that the plaintiffs' contribution action is foreclosed because Wang was not a party to the underlying product liability action and, therefore, does not fall within the scope of the comparative responsibility or contribution provisions of § 52-572o. In the alternative, Wang argues that the contribution action is untimely because it was brought more than one year after the judgment in the Kissel action became final. See General Statutes § 52-572o (e). We reject both arguments and affirm the judgment of the trial court.

I

The underlying facts are not in dispute. In April, 2012, Kissel brought a medical malpractice action against Wang and his employer, the Center for Women's Health, P.C.,[2] for injuries she sustained when a heat lamp made

---

[2] For purposes of this opinion, we discuss only Kissel, Wang, and HBWS, because the procedural history regarding the Center for Women's Health, P.C., is not relevant to the present case. For additional facts and procedural background of the Kissel action, see *Kissel* v. *Center for Women's Health, P.C.*, supra, 205 Conn. App. 398–410, 437–42.

contact with her foot during an acupuncture session performed by Wang. Pursuant to General Statutes § 52-102a, Wang filed a third-party complaint against HBWS, the manufacturer of the heat lamp, alleging that, in the event that Kissel prevailed against Wang, HBWS would be to liable to Wang for all or part of the judgment due to the defective condition of the product.[3] Wang's initial third-party complaint contained numerous counts alleging a variety of different causes of action against HBWS, but it ultimately was amended to allege a single count under the CPLA. See General Statutes § 52-572n (a) ("[a] product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product"). In its answer to Wang's third-party complaint, HBWS raised a special defense that Wang was responsible for Kissel's injuries due to his negligence in handling the heat lamp.

In March, 2013, Kissel filed a complaint in the Kissel action directly against HBWS. This complaint, like Wang's third-party complaint, was eventually amended to contain a single count alleging that HBWS was responsible under the CPLA for Kissel's injuries caused by the defective heat lamp. In its answer to Kissel's complaint, HBWS raised two special defenses relevant to this appeal. Its first special defense alleged that any injury, loss or damage sustained by Kissel was caused, in whole or in part, by the actions or inactions of Kissel herself, and asserted that, "accordingly, [Kissel] bears comparative responsibility for any such claimed damages or losses in accordance with the provisions of . . . § 52-572o." Its third special defense alleged that the damages claimed in Kissel's complaint were the result of Wang's negligent use of the heat lamp, thereby

---

[3] The parties and the trial court often refer to HBWS as "The WABBO Company" or "WABBO." For clarity and consistency, we use the name HBWS in this opinion.

entitling HBWS to a determination of the percentage of responsibility of each party responsible for the harm and, if HBWS were found to be liable, "a reduction of its liability and/or contribution for the comparative responsibility of . . . Wang."[4]

The Kissel action was tried to a jury in November and December of 2017. Early in the trial, Wang withdrew his third-party complaint against HBWS. At that point in the case, the operative claims remaining to be tried were Kissel's medical malpractice claim against Wang and Kissel's product liability claim against HBWS, as well as all of the associated special defenses. The jury returned a verdict for Kissel against HWBS and Wang and awarded her $1 million in total damages.

In connection with its deliberations, a series of fifteen interrogatories was submitted to the jury requiring its findings as to liability, causation, damages, and comparative responsibility under § 52-572o. To summarize, the jury found that Wang had breached the applicable stan-

[4] Due to its importance to this appeal, we quote HBWS's third special defense to Kissel's complaint in its entirety: "The damages alleged in the complaint are the result of the negligent acts or omissions of codefendant . . . Wang, in that he: [a] used the subject heat lamp in a manner inconsistent with the normal use and application of the product as reasonably anticipated by the manufacturer or seller; [b] failed to follow and undertake the precautions a reasonably careful user of the lamp would ordinarily take under the circumstances then and there existing, including, but not limited to, not placing the head of the heat lamp in extremely close proximity to [Kissel's] foot; [c] failed to monitor or attend to [Kissel] during the course of the acupuncture procedure and failed to promptly respond to the situation; [and] [d] failed to follow the ordinary and customary standards of the acupuncture profession with regard to the use of the subject heat lamp. In accordance with the provisions of . . . § 52-572o and [General Statutes §] 52-577a, [HBWS] is entitled to a determination of the percentage of responsibility of each responsible party causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission or other form of legal responsibility and, if [HBWS] is found liable, which liability it continues to deny, then [HBWS] is entitled to a reduction of its liability and/or contribution for the comparative responsibility of . . . Wang."

dard of care and thereby caused Kissel's injuries, that Wang had not proven his special defense that Kissel's own negligence was also a proximate cause of her injuries, that HBWS was liable to Kissel because her injuries were caused by its defective heat lamp, and that Kissel had sustained damages totaling $1 million. In response to the interrogatories regarding comparative responsibility under § 52-572o, the jury found HBWS 80 percent responsible and Wang 20 percent responsible for Kissel's damages.[5]

HWBS and Wang each filed a motion to set aside the verdict on numerous grounds. These motions, as well as Wang's motion for remittitur, were denied by the trial court in a lengthy memorandum of decision. The court thereafter rendered judgment in accordance with the jury's verdict. The judgment contained a verbatim replication of the interrogatories and the jury's answers, including the jury's determination of the percentage of responsibility allocated to each party. Additional details regarding the relevant jury instructions, jury interroga-

---

[5] As relevant to the issue of comparative responsibility, the interrogatories and the jury's answers thereto were as follows:

"11. Did [HBWS] prove, with respect to [Kissel's] product liability claim, that the negligent or other improper conduct of [Kissel] and/or . . . Wang, as alleged by [HBWS] in its special defense, was also a proximate cause of [Kissel's] injuries?

"[Answer] YES . . . .

"[If the answer is 'YES,' go to interrogatory #12; if the answer is 'NO,' go to interrogatory #13.]

"12. For purposes of the product liability claim, the parties proved that the respective comparative responsibility of the parties with respect to the events of April 22, 2010, is as follows (must add up to 100 [percent]):

"Responsibility of [HBWS]      [Answer] 80 [percent]
"Responsibility of . . . Wang      [Answer] 20 [percent]
"Responsibility of [Kissel]      [Answer] 0 [percent]

"13. [Kissel] proved that she sustained the following damages (pain, loss of function, loss of enjoyment of life's activities):

"To date of trial      [Answer] $750,000
"Future      [Answer] $250,000
"Total damages      [Answer] $1,000,000."

tories, and postverdict proceedings in the underlying matter will be set forth as necessary.

Wang appealed from the judgment in the Kissel action, claiming, among other things, that the trial court had improperly denied his motion to dismiss Kissel's medical malpractice claim for failure to comply with General Statutes § 52-190a.[6] See *Kissel* v. *Center for Women's Health, P.C.*, supra, 205 Conn. App. 397, 399–400. HBWS filed a separate appeal from the judgment, claiming, among other things, that the trial court had improperly denied its motions for a directed verdict and to set aside the verdict because Kissel had failed to present sufficient evidence of causation as to the product liability claim. See id., 397, 436. The appeals were consolidated. In June, 2021, the Appellate Court issued its decision, holding that the medical malpractice claim against Wang must be dismissed for lack of personal jurisdiction due to Kissel's failure to comply with § 52-190a within the limitation period; see id., 436; but affirming the judgment of the trial court "with respect to the product liability claim . . . ." Id., 447. HBWS then filed a petition for certification to appeal, which this court denied on November 9, 2021. See *Kissel* v. *Center for Women's Health, P.C.*, 339 Conn. 917, 262 A.3d 137 (2021). Kissel similarly filed petitions for certification to appeal from the Appellate Court's judgment

---

[6] General Statutes § 52-190a (a) requires, among other things, that the plaintiff in a medical malpractice action "obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion" and "attach a copy of such written opinion" to the complaint. In the trial court, Wang had challenged Kissel's compliance with § 52-190a because the complaint, as originally served and filed, contained a certification by Kissel's counsel indicating that he had made a reasonable inquiry that led to a good faith belief that grounds existed for this medical malpractice action against Wang, but failed to attach an actual copy of the opinion letter itself. The opinion letter was subsequently filed with the court as an exhibit to an amended complaint, accompanied by an affidavit averring that the letter was in counsel's possession at the time the action was commenced.

in favor of Wang, which we granted on November 9, 2021.[7] Kissel later withdrew her appeals on January 11, 2022, after HBWS (through its insurance carrier Landmark) paid Kissel $1.2 million in satisfaction of the judgment, including costs and interest.

After satisfying the judgment in the Kissel action, the plaintiffs sent a written demand to Wang seeking contribution in the amount of 20 percent of $1.2 million, reflecting the percentage of responsibility allocated to Wang in the Kissel action judgment. Wang refused the demand. On May 10, 2022, the plaintiffs filed this action against Wang seeking contribution pursuant to § 52-572o for 20 percent of the amount paid by HBWS in satisfaction of the Kissel action judgment, including applicable interest and costs from the date of payment. The complaint alleged, in relevant part, that Wang was liable for contribution under § 52-572o (e) because the trial court in the Kissel action had rendered judgment on the jury's verdict finding Wang 20 percent responsible for Kissel's damages.

Wang answered the complaint and filed special defenses. His first special defense claimed that the plaintiffs' contribution action was untimely under the one year limitation period set forth in § 52-572o (e) because it was not brought by January 3, 2020, which was one year after the trial court's denial of Wang's postverdict motions in the Kissel action. His second special defense alleged that the trial court in the Kissel action lacked jurisdiction to render judgment against him with respect to the allocation of comparative responsibility under § 52-572o because he "was not a party to the product liability action when the jury [returned] its verdict." He alleged that he lacked party status in the underlying Kissel action for two reasons: (1) the underlying judgment

---

[7] See *Kissel* v. *Center for Women's Health, P.C.*, supra, 339 Conn. 917; *Kissel* v. *Center for Women's Health, P.C.*, supra, 339 Conn. 916.

against Wang became "void ab initio" when the Appellate Court issued its decision holding that the trial court should have dismissed Kissel's medical malpractice claim for lack of personal jurisdiction, and (2) Wang was not a party to any pleadings pertaining to "apportionment"[8] in that action because HBWS had never filed a cross complaint or a third-party complaint against him. For all of these reasons, Wang claimed that the judgment assigning him 20 percent responsibility was not binding on him.

In January, 2024, the trial court found that there was no genuine issue of material fact in this case, granted the plaintiffs' motion for summary judgment, and rendered judgment in their favor in the amount of $240,000. In its memorandum of decision, the trial court reasoned that the jury's comparative responsibility determination in the Kissel action was binding on Wang because, "even after he sought and received permission to withdraw his affirmative product liability claim, [Wang] took no action to remove himself from the product liability portion of the original Kissel action and thus remained named as a responsible party in the [third special] defense asserted by [HBWS] to Kissel's product liability claim." The trial court also concluded that the plaintiffs' contribution action was timely because the one year period for the commencement of a contribution action "did not begin to run until the plaintiffs had exhausted all their appellate remedies," which was when this court denied HWBS's petition for certification to appeal in

---

[8] The term "apportionment," although used by the parties at various points in this case, is a term of art in Connecticut regarding the distribution of liability among negligent tortfeasors pursuant to General Statutes § 52-572h (o). The CPLA, by contrast. does not use the term "apportionment" but, rather, refers to the "allocat[ion]" of comparative responsibility. General Statutes § 52-572o (b). Because the two statutory schemes operate differently, we will avoid using the term apportionment to describe the allocation of comparative responsibility under § 52-572o.

November, 2021. See *Kissel* v. *Center for Women's Health, P.C.*, supra, 339 Conn. 917.

Wang timely appealed to the Appellate Court, and, pursuant to Practice Book § 65-1, the appeal was transferred to this court. He raises two claims of error. First, he argues that the plaintiffs cannot bring a contribution action against him because he was not a "party" to the underlying action at the time the verdict was returned. In support of this claim, he argues that the plain meaning of § 52-572o requires that a contribution defendant "must have been a party to the underlying action" and, specifically, must have been a party to what he calls the underlying "product liability action." Wang asserts that he was not a party to the product liability action because "HBWS never impleaded [him] or served him with process to obtain jurisdiction over him." Additionally, relying on *Crotta* v. *Home Depot, Inc.*, 249 Conn. 634, 639–41, 732 A.2d 767 (1999), Wang argues that a defendant is not legally obligated for contribution unless that defendant is "originally liable" to the plaintiff in the underlying product liability action. He contends that he was not originally liable to Kissel because she never brought a product liability claim against him, and the trial court's judgment incorporating a finding of his liability for medical malpractice was rendered void ab initio on appeal. See *Kissel* v. *Center for Women's Health, P.C.*, supra, 205 Conn. App. 411, 436. In the alternative, Wang contends that the plaintiffs' contribution action is untimely because, pursuant to § 52-572o (e), such an action must commence "within one year after the judgment becomes final," which he interprets to mean as within one year from when judgment is rendered in the trial court.

The plaintiffs maintain that Wang was a party to the underlying action and is therefore bound by its judgment of comparative responsibility. They emphasize that both the medical malpractice and product liability

claims "were brought . . . and tried in the same judicial proceeding, within the context of a single action, bearing a single docket number, with the verdict [being returned] by a single jury," and point out that the judgment of comparative responsibility in the Kissel action was not disturbed on appeal. They also argue that their contribution action is timely because, under "[t]he plain language of § 52-572o and the common-law principles it embodies, the related precedent, and commonsense public policy," a contribution action must be brought within one year of the judgment in the underlying action becoming final through the termination of appellate proceedings.

## II

Wang argues that the allocation of comparative responsibility under § 52-572o can be made only among parties to a "product liability action." He contends that he was not such a party once he withdrew his putative product liability claim against third-party defendant HBWS early in the trial of the Kissel action. We reject this argument because it proceeds from a faulty premise. The phrase "product liability action" never appears in § 52-572o, and the statute contains no requirement that the allocation of comparative responsibility is limited to defendants whose liability is based on a product liability *claim*. To the contrary, we construe § 52-572o to provide that, in an action involving both product liability claims and nonproduct liability claims in which the harm is indivisible, an adjudication of comparative responsibility is proper with respect to every party to the action. The statutory assessment of comparative responsibility in the Kissel action was proper because Kissel asserted a product liability claim against HBWS and a medical malpractice claim against Wang for the same indivisible harm.[9]

---

[9] We address in part II B of this opinion the effect of the appellate reversal of the medical malpractice portion of the judgment against Wang in the Kissel action. The present discussion relates solely to Wang's claim that he

A

Before embarking on our statutory analysis, it is necessary to describe in greater detail the position that Wang took in the Kissel action with respect to the very issue now under consideration, i.e., the applicability to him of the comparative responsibility provisions contained in § 52-572o. We do so because Wang's position during the Kissel trial was diametrically opposed to his current position in this action for contribution and consequently forecloses his ability to now argue that the allocation of comparative responsibility assessed in the Kissel action is not binding on him.

As noted in part I of this opinion, the jury was asked to answer a series of interrogatories before reaching a verdict. With appropriate directions at each step of the inquiry, the first five interrogatories related to Kissel's medical malpractice claim against Wang. The next five interrogatories related to Kissel's product liability claim against HBWS. The final five interrogatories are most directly relevant to this appeal because they guided the jury's decisionmaking regarding comparative responsibility pursuant to § 52-572o (e). Interrogatory eleven asked whether HBWS had "prove[n], with respect to [Kissel's] product liability claim, that the negligent or other improper conduct of [Kissel] and/or . . . Wang, as alleged by [HBWS] in its special defense[s], was also a proximate cause of [Kissel's] injuries . . . ." Interrogatory twelve required the jury to allocate the percentage of comparative responsibility attributable to each party, specifically HBWS, Wang, and Kissel. Interrogatories thirteen, fourteen, and fifteen required the jury to determine past and future damages, total damages, damages attributable to the medical malpractice claim, and dam-

should not have been included in the assessment of comparative responsibility at trial because he was not a party to a product liability action once he withdrew his third-party complaint against HBWS asserting a claim for product liability.

ages attributable to the product liability claim. See footnote 5 of this opinion.

The important point for immediate purposes is not the jury's answers to these interrogatories[10] but the fact that Wang himself was substantially responsible for formulating the interrogatories, including the interrogatories asking the jury to allocate comparative responsibility pursuant to § 52-572o. The record indicates that it was Wang who first submitted proposed jury interrogatories to the trial court, and his proposed interrogatories specifically asked the jury to determine whether HBWS had proven its special defenses alleging that Kissel and Wang should be found responsible for any damages sustained by Kissel in connection with the product liability claim against HBWS. In subheadings typed in bold font, Wang's proposed interrogatories explicitly stated that they were related to HBWS's special defense of comparative responsibility against Kissel and its special defense of contribution against Wang. In particular, Wang's proposed interrogatory eight, labeled "**ALLOCATION OF FAULT UNDER THE PRODUCT LIABILITY ACT**," asked: "What specific percentage of fault do you attribute to each party to describe or measure the degree to which that party's wrongful con-

---

[10] With regard to the medical malpractice claim, the jury found that Wang had breached the applicable standard of care, that his negligence had caused Kissel's injuries, that Kissel's resulting damages were valued at $1 million, and that Kissel herself had not been negligent. As to the product liability claim, the jury found that HBWS was liable to Kissel for its sale of a defective and unreasonably dangerous heat lamp and valued her damages in connection with that claim at $1 million, as well. To avoid duplicative damages, the verdict form made clear that the aggregate damages award against both defendants totaled $1 million and that Kissel would not be entitled to recover more than her total damages under any circumstances. As for the allocation of comparative responsibility in connection with the product liability claim, the jury found that Wang's negligence in operating the lamp, as alleged in HBWS's special defense, was also a proximate cause of Kissel's injuries, attributing 80 percent responsibility to HBWS and 20 percent to Wang. The jury determined that Kissel was not responsible for her injuries.

duct contributed to any injury or loss to [Kissel]?" (Emphasis in original.) The interrogatory lists the parties to be assigned a percentage of responsibility as "Plaintiff [Kissel]," "Defendant [HWBS]," and "Defendant [Wang]."[11]

This submission, filed by Wang one month *after* he withdrew his product liability claim against HBWS, definitively demonstrates that Wang's argument in this appeal directly contradicts the position that he asserted at trial in the Kissel action with respect to the applicability of the comparative responsibility provisions of § 52-572o to him. During the Kissel trial, Wang affirmatively and without reservation acknowledged that he was an appropriate party to be included in the allocation of responsibility pursuant to § 52-572o, and he did so with full knowledge of the fact that he was not himself a party to what he now calls a "product liability action." Wang specifically adopted the view that the allegations in HBWS's special defenses to Kissel's product liability claim provided a sufficient basis to submit to the jury the issue of comparative responsibility, including his own comparative responsibility.[12]

Had Wang objected to being included as a "party" for purposes of comparative responsibility on the ground that he was not properly subject to the allocation pro-

[11] The interrogatories submitted to the jury regarding comparative responsibility departed in certain respects from those proposed by Wang, but the differences are not material to the claims raised by Wang in this appeal. We see nothing in the record to suggest that Wang raised any objection or took any exception to the interrogatories as submitted to the jury.

[12] It is also noteworthy that Wang submitted proposed jury instructions reflecting the same legal position contained in his proposed jury interrogatories. Wang thus requested that the jury determine whether he "violated the professional standard of care" and whether "such violation was a legal cause of [Kissel's] injuries," and, if so, assign him a percentage of responsibility pursuant to the rules of comparative responsibility. Again, although the charge as given by the trial court did not precisely track Wang's requested instruction, it was consistent with Wang's position regarding the applicability of § 52-572o.

cess after he withdrew his third-party complaint, HBWS would have had the opportunity to file a cross claim against Wang, which he now argues was required to invoke the comparative responsibility provisions of § 52-572o. See Practice Book § 10-10 ("In any action for legal or equitable relief, any defendant may file . . . cross claims against any codefendant provided that each such . . . cross claim arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . . A defendant may also file a . . . cross claim under this section against any other party to the action for the purpose of establishing that party's liability to the defendant for all or part of the plaintiff's claim against that defendant."). Rather than objecting, however, Wang instead filed jury interrogatories and jury instructions recognizing and adopting his status as a party subject to allocation of comparative responsibility on the basis of the special defense asserted by HBWS in its response to Kissel's third-party complaint.

Ordinarily, the foregoing circumstances would lead us to conclude that Wang is barred in this appeal from raising any claims challenging the binding effect of a procedure that was adopted or encouraged by Wang's own conduct in the underlying action. Just as a party "cannot pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him"; (internal quotation marks omitted) *State* v. *Wade*, 351 Conn. 745, 758, 333 A.3d 90 (2025); so, too, a party cannot use the very path he proposed for the allocation of comparative responsibility in a prior action to prevent its enforcement in a subsequent action for contribution. Cf. *Chapin* v. *Popilowski*, 139 Conn. 84, 88, 90 A.2d 167 (1952) ("[a]ction induced by [an] appellant cannot be made a ground of error" (internal quotation marks omitted)). "[W]hether we call it induced error, encouraged error, waiver, or abandonment, the

result—that the . . . claim is unreviewable—is the same." (Internal quotation marks omitted.) *Independent Party of CT—State Central* v. *Merrill*, 330 Conn. 681, 724, 200 A.3d 1118 (2019); see *Dougan* v. *Dougan*, 301 Conn. 361, 372, 21 A.3d 791 (2011) ("[J]udicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding. . . . The courts invoke judicial estoppel as a means to preserve the sanctity of the oath or to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." (Internal quotation marks omitted.)); see also *BPP Illinois, LLC* v. *Royal Bank of Scotland Group PLC*, 859 F.3d 188, 192–94 (2d Cir. 2017) (plaintiffs were judicially estopped from asserting claims in action for fraud after asserting that they had no such claims in prior, separate bankruptcy proceeding).

Despite our misgivings, however, we have decided to reach the merits of Wang's claims to the extent that they do not involve matters of form that could have been cured by HBWS had the claimed pleading deficiency been challenged (rather than induced) by Wang in the Kissel action. Specifically, we will address the merits of Wang's claims that (1) the procedures governing comparative responsibility and contribution under § 52-572o apply only to defendants who are parties to a "product liability action," and (2) the appellate reversal of the medical malpractice portion of the judgment in the Kissel action rendered null and void the portion of the judgment in that action assessing Wang 20 percent comparative responsibility. We do so primarily because HBWS has not raised in this appeal a claim of induced error, waiver or judicial estoppel on the basis of Wang's proposed jury interrogatories and jury charge in the Kissel action.

### B

Whether Wang was a "party" subject to the comparative responsibility provisions in § 52-572o presents a

matter of statutory construction over which our review is plenary. See, e.g., *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 696, 258 A.3d 1268 (2021). In matters of statutory interpretation, we are guided by General Statutes § 1-2z, which directs us first to consider "the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." A statute is ambiguous if it "is susceptible to more than one plausible interpretation." *State* v. *Orr*, 291 Conn. 642, 654, 969 A.2d 750 (2009). We thus begin our analysis with the language of § 52-572o and the relevant statutory scheme, remaining mindful that "we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of [those] statute[s]." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014).

Because Wang argues that he was not a "party" subject to the statute's comparative responsibility regime within the meaning of § 52-572o, we will focus initially on the provisions of the statute that describe the scope of its application to any particular defendant,[13] specifically subsections (b) through (d), which provide:

"(b) In any claim involving comparative responsibility, the court may instruct the jury to give answers to special interrogatories, or if there is no jury, the court may make its own findings, indicating (1) the amount

---

[13] We need not be detained by any question regarding the statute's application to a plaintiff asserting a product liability claim because the procedure for allocation of responsibility plainly applies to such plaintiffs, referred to as "claimants" under the CPLA. See General Statutes § 52-572o (a) (comparative responsibility applies to "claimant[s]"); General Statutes § 52-572o (b) (same); see also General Statutes § 52-572m (c) (defining "claimant").

of damages each claimant would receive if comparative responsibility were disregarded, and (2) the percentage of responsibility allocated to each *party*, including the claimant, as compared with the combined responsibility of all *parties* to the action. For this purpose, the court may decide that it is appropriate to treat two or more persons as a single *party*.

"(c) In determining the percentage of responsibility, the trier of fact shall consider, on a comparative basis, both the nature and quality of the conduct of the *party*.

"(d) The court shall determine the award for each claimant according to these findings and shall enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfeasors. The judgment shall also specify the proportionate amount of damages allocated against each *party* liable, according to the percentage of responsibility established for such *party*." (Emphasis added.) General Statutes § 52-572o (b) through (d).

The statute's repeated use of the term "party" demonstrates that the legislature intended for parties, and only parties, to be subject to the jury's determination of comparative responsibility under § 52-572o. Neither Wang nor HBWS disputes this point. But "parties" to what? Wang argues that the term "party," with reference to defendants, means only a defendant to a product liability claim,[14] whereas HBWS argues that the term "party"

[14] Wang asserts that the term "party" refers specifically to a party to a "product liability *action*." (Emphasis added.) Throughout his briefing, his argument relies on distinguishing between Kissel's "product liability action" against HBWS and her "medical malpractice action" against Wang. But the statute uses the term "product liability *claim*," which it defines broadly to include "all claims *or* actions" in which a claimant seeks damages against a product seller for personal injury, death or property damage caused by a product. (Emphasis added.) General Statutes § 52-572m (b). In the underlying case, Kissel's product liability *claim* and her medical malpractice *claim* were pleaded and tried in one action, arising from a single transaction or occurrence. See *Veits* v. *Hartford*, 134 Conn. 428, 434, 58 A.2d 389 (1948) ("[when] the facts forming the basis [on] which the plaintiff claims relief constitute a single transaction or occurrence, he may sue in one action two

encompasses all defendants to an action "involving" a product liability claim, regardless of whether the particular defendant is prosecuting or defending a product liability claim. These differing understandings of the term "party" have significant implications in an action, such as this one, in which a plaintiff seeking damages for a single, indivisible harm brings an ordinary negligence claim against one defendant and a product liability claim under the CPLA against another defendant.[15] Under Wang's construction of § 52-572o, the jury may make a comparative responsibility determination only as between the plaintiff and the defendant sued under the CPLA. Under HBWS's construction, so long as both defendants are parties to the action, the jury may make a comparative responsibility determination as to the plaintiff and both defendants.

Upon examination, we believe that the statutory language leads to only one reasonable construction regarding the parties subject to the comparative responsibility procedure. Section 52-572o (b) instructs that the allocation procedure is applicable "[i]n any claim involving

---

or more defendants against whom he claims relief, and it does not matter that they may be liable concurrently, successively or in the alternative, or that the relief against each has a different legal basis"). For these reasons, Wang's use of the terms "product liability action" and "medical malpractice action" is incorrect, and we will construe Wang's position to be that the term "party," for purposes of § 52-572o, refers specifically to parties to a product liability *claim*, meaning that only parties to such a claim within a hybrid action (i.e. actions containing both CPLA and non-CPLA claims) may be allocated a percentage of responsibility under § 52-572o.

[15] In the Kissel action, Kissel's negligence claim against Wang was not a "product liability claim" because, among other reasons, Wang was not a "product seller" within the purview of the CPLA. The CPLA defines a "product seller" to mean "any person or entity, including a manufacturer, wholesaler, distributor or retailer *who is engaged in the business of selling such products whether the sale is for resale or for use or consumption.* The term 'product seller' also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products." (Emphasis added.) General Statutes § 52-572m (a); see, e.g., *Normandy* v. *American Medical Systems, Inc.*, 340 Conn. 93, 101–102, 262 A.3d 698 (2021) (product liability claim can be brought only against "product seller").

comparative responsibility . . . ." This phrase itself arguably is ambiguous because the phrase "claim involving comparative responsibility" has no precise, everyday, or technical meaning.[16] The remainder of the sentence, however, provides the interpretive guidance we need by specifying that the trial court may instruct the jury to make comparative responsibility findings as to (1) the total damages owed to each claimant without regard to any consideration of the comparative responsibility of *any* party, and (2) "the percentage of responsibility allocated to *each* party, including the claimant, as compared with the combined responsibility of *all* parties to the action."[17] (Emphasis added.) General Statutes § 52-572o (b). Read as a whole, the first sentence in § 52-572o (b) unambiguously means that the legislature has created a statutory procedure—what may usefully be called a comparative responsibility claim—available in any action that includes a product liability claim for indivisible damages. A properly pleaded comparative responsibility claim calls for the trier of fact to allocate comparative responsibility among the plaintiff and all of the defendants that caused those damages, in whole or in part.

We have concluded that the text of § 52-572o (b) does not state or imply that the class of parties subject to a comparative responsibility claim is limited to plaintiffs

---

[16] The word "involving" is broad and nonspecific. See, e.g., *KalshiEX, LLC* v. *Commodity Futures Trading Commission*, Docket No. 23-3257 (JMC), 2024 WL 4164694, *10 (D.D.C. September 12, 2024) (observing that term "involve" is "broadly defined"), appeal dismissed, Docket No. 24-5205, 2025 WL 1349979 (D.C. Cir. May 7, 2025). It appears likely that it is used in § 52-572o (b) to refer to the claim of comparative responsibility that is created by the statute.

[17] "There cannot be any broader classification than the word all. . . . In its ordinary and natural meaning, the word all leaves no room for exceptions." (Internal quotation marks omitted.) *Redding* v. *Georgetown Land Development Co., LLC*, 337 Conn. 75, 91, 251 A.3d 980 (2020); see also *Canton* v. *Cadle Properties of Connecticut, Inc.*, 316 Conn. 851, 858, 114 A.3d 1191 (2015) (legislature's use of "[t]he [word] 'all' . . . support[ed] the broadest possible reading" of statute).

and those named as a defendant to a product liability claim, as Wang proposes. Our conclusion is bolstered by the fact that, if the legislature had so intended, it would have expressed such a limitation in subsection (b) or the other provisions of the statute by using ready-made, statutorily defined terms to refer specifically to the "parties to the product liability claim" or, alternatively, "claimants and product sellers."[18] Although there are often different ways to say the same thing, and the legislature's choice of one textual formulation does not necessarily demonstrate an intention to eschew every possible alternative formulation, normally, "we assume that the legislature has a different intent when it uses different terms in the same statutory scheme." *Southern New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 662, 931 A.2d 142 (2007) (*Katz, J.*, concurring); see, e.g., *United States* v. *Davis*, 648 F.3d 84, 95 (2d Cir. 2011) ("when Congress did intend its reform measures to stretch beyond the reach of 18 U.S.C. § 983 (i), it used language manifesting that intent, carefully avoiding the 'civil forfeiture statute' phrase that it had specifically defined as a term of art with a meaning narrower than its more natural purport"). In the present context, the statutory definitions of "product liability claim" and "product seller" in the CPLA provided two obvious options that naturally could have been used to express the meaning advocated by Wang, had it been intended. The legislature instead chose to use the broad

---

[18] A plaintiff asserting a product liability claim is defined in § 52-572m (c) as a "claimant," a term that is used repeatedly in § 52-572o to indicate that such a plaintiff is a party subject to the comparative responsibility procedure. Although the term "product seller" likewise is defined in the CPLA to identify those persons or entities within the limited class of defendants subject to suit in connection with a product liability claim; see General Statutes § 52-572m (a); the term "product seller," unlike its statutory counterpart "claimant," appears nowhere in § 52-572o to limit the class of defendants subject to a comparative responsibility claim. Had the legislature intended to limit the allocation of comparative responsibility only to defendants named in the products liability claim, as Wang asserts, the term "defendant product seller" would have been the obvious language to indicate that intention.

terms "each party" and "all parties to the action," and we will take the legislature at its word. General Statutes § 52-572o (b).

Subsections (c) and (d) of § 52-572o provide additional procedures for allocating comparative responsibility, and they also do so in terms too broadly worded to suggest the restrictive meaning advanced by Wang. Section 52-572o (c) provides guidance to the trier of fact in determining the percentage of responsibility by requiring the trier to "consider, on a comparative basis, both the nature and quality of the conduct of the party," again without suggesting any limitation regarding the parties within its scope. Section 52-572o (d) likewise speaks in the broadest terms possible when it requires the court to "determine the award for each claimant according to these findings [of comparative responsibility]," and to "enter judgment *against parties liable* on the basis of the common law joint and several liability of joint tortfeasors." (Emphasis added.) The provision further instructs that the "judgment shall also specify the proportionate amount of damages allocated *against each party* liable, according to the percentage of responsibility established for such party." (Emphasis added.) General Statutes § 52-572o (d). These terms all point toward an intention to include all defendants found responsible for the claimant's damages, not merely those responsible on the basis of a product liability claim.[19] The judgment in the action will, of necessity, include the disposition of both CPLA and non-CPLA claims and,

---

[19] Wang argues that the statutory text supports his construction because subsection (d) of § 52-572o twice refers to the judgment allocating damages against "liable" defendants, and claims that he was absolved of liability when the medical malpractice portion of the judgment against him was reversed on appeal. The point we make here is that the statute authorizes allocation of responsibility among all defendants found to have caused a claimant's damages and is not limited in scope to product sellers named as defendants to the product liability claim. Part II C of this opinion addresses Wang's argument that he was absolved of all liability in his appeal in the Kissel action.

therefore, necessarily will include the judgment as to non-CPLA defendants; it would be incongruous if the statute prescribed the required elements of the judgment only with respect to the former class of defendants. We presume that "the legislature knows how . . . to use broader or limiting terms when it chooses to do so." (Internal quotation marks omitted.) *Costanzo* v. *Plainfield*, 344 Conn. 86, 108, 277 A.3d 772 (2022).

This conclusion is further strengthened by our precedent establishing that all defendants, including product sellers and nonproduct sellers, may be allocated a percentage of comparative responsibility under § 52-572o. In *Malerba* v. *Cessna Aircraft Co.*, 210 Conn. 189, 554 A.2d 287 (1989), the plaintiff sustained injuries in an airplane accident and brought a product liability action against the airplane's manufacturer. See id., 190. The airplane's manufacturer impleaded the airplane's owner and its mechanic, neither of whom was classified as a product seller for purposes of the CPLA, and sought recovery on the basis of common-law contribution and indemnification. See id., 191. The trial court ordered the contribution claim stricken on the ground that, unless judgment has been rendered in the underlying action, a contribution claim cannot be commenced unless the party seeking contribution alleges either of the two statutory "precondition[s]" set forth in § 52-572o (e), i.e., that the person seeking contribution has either paid or agreed to pay the common liability for which contribution is sought.[20] Id., 193. We held that the third-party

---

[20] General Statutes § 52-572o (e) provides: "If a judgment has been rendered, any action for contribution must be brought within one year after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (1) discharged by payment the common liability within the period of the statute of limitations applicable to the right of action of the claimant against him and commenced the action for contribution within one year after payment, or (2) agreed while action was pending to discharge the common liability and, within one year after the agreement, have paid the liability and brought an action for contribution."

complaint for contribution under § 52-572o (e) was proper because these preconditions "apply only to those circumstances [in which] a party elects to pursue an independent cause of action for a contribution rather than impleading the prospectively liable third party as authorized by [General Statutes] §§ 52-102a and 52-577a (b)." Id., 195. In so holding, we explained that such a construction "furthers the salutary purpose of encouraging parties to consolidate the litigation following from a given factual circumstance into a single judicial proceeding thereby avoiding multiplicity of actions." Id.

Our holding in *Malerba* strongly implies that a nonproduct seller may be made a party to a product liability action for purposes of contribution under § 52-572o (e); otherwise, the contribution action brought by the airplane's manufacturer against the airplane's owner and its mechanic was legally impermissible as a threshold matter, regardless of the preconditions contained in § 52-572o (e). Similarly, it is implicit in our holding in *Malerba* that the percentage of responsibility allocated to a nonproduct seller defendant under § 52-572o (b) through (d) will determine the amount owed by that defendant in a subsequent contribution action brought under § 52-572o (e). To the extent that these holdings were implicit in *Malerba*, we now make them explicit.[21]

---

[21] In line with *Malerba*, Connecticut courts have repeatedly permitted the allocation of comparative responsibility among product and nonproduct sellers under § 52-572o. See *Foular* v. *Mine Safety Appliances Co.*, Superior Court, judicial district of Middlesex, Docket No. X04-CV-04-4001319-S (November 30, 2017) (44 Conn. L. Rptr. 608, 609) ("[this] [c]ourt held [in *Malerba*] . . . that it was permissible for a defendant in a product liability action to bring a third-party action for contribution against a party other than a product seller"); *Nolen-Hoeksema* v. *Maquet Cardiopulmonary AG*, Superior Court, judicial district of New Haven, Docket No. CV-14-6049888-S (June 6, 2016) (62 Conn. L. Rptr. 460, 461–62) (in product liability action, third-party complaint seeking contribution from nonproduct seller was permitted); *Ambro* v. *Inland Paperboard & Packaging*, Docket No. CV-04-0287592-S, 2004 WL 3130537, *2 (December 20, 2004) ("the product liability defendant may seek allocation of responsibility with and contribution from joint tortfeasors, whether negligent or otherwise liable"); *Gazza* v. *Bandit Industries, Inc.*, Superior Court, judicial district of New Britain, Docket No.

Our construction of § 52-572o based on its text also accommodates the fact that the statute, as construed, provides a solution to the vexing situation that would otherwise arise if contribution from non-CPLA defendants were unavailable under the CPLA. It is not uncommon that both product and nonproduct sellers may be implicated in causing the same indivisible harm to persons or property. Yet, were we to construe § 52-572o as proposed by Wang, three distinct doctrinal obstacles would combine to frustrate apportionment or allocation under these circumstances.[22] First, it is axiomatic that only product sellers may be named as defendants in a product liability claim. See, e.g., *Normandy* v. *American Medical Systems*, *Inc.*, 340 Conn. 93, 101, 262 A.3d 698 (2021). Second, it is likewise well established that the CPLA is the exclusive remedy for a claim falling within its scope. See, e.g., *Winslow* v. *Lewis-Shepard*, *Inc.*, 212 Conn. 462, 463, 471, 562 A.2d 517 (1989). Third, it is clear that apportionment of comparative negligence under General Statutes § 52-572h is available only as between negligent parties.[23] Thus, if § 52-572o does not

X03-CV-99-0499931-S (January 22, 2001) (29 Conn. L. Rptr. 269, 270–71) (noting that any verdict in product liability action will include a determination of percentage of responsibility under § 52-572o (b) through (d) as to all defendants, including nonproduct sellers).

[22] Yet another doctrine, the common-law prohibition against contribution, would preclude one responsible party from obtaining contribution from another responsible party under these circumstances. See *Kyrtatas* v. *Stop & Shop*, *Inc.*, 205 Conn. 694, 700, 535 A.2d 357 (1988) ("the legislature in subsection (e) of § 52-572o has abolished the [common-law] prohibition against contribution in the context of these suits").

[23] See General Statutes § 52-572h (o) ("there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including, but not limited to, an action for wrongful death pursuant to section 52-555 or an action for injuries caused by a motor vehicle owned by the state pursuant to section 52-556"). We need not address in this opinion whether a negligence claim brought pursuant to the CPLA is subject to apportionment under § 52-572h (o). See General Statutes § 52-572m (b) (defining "product liability claim" to include,

permit the trier of fact to allocate percentages of responsibility to both CPLA and non-CPLA defendants, then, despite the manifest legislative preference for apportionment among negligent parties reflected in § 52-572h and the same policy preference for product liability claims under § 52-572o, we would need to assume that the legislature intended to exclude from any apportionment of fault or allocation of responsibility all hybrid cases involving both CPLA and non-CPLA claims. Although we will not "engraft language . . . to enhance or supplement a statute containing clearly expressed language"; (internal quotation marks omitted) *State* v. *Obas*, 320 Conn. 426, 436, 130 A.3d 252 (2016); we are required to construe statutes with the understanding that "[t]he legislature is always presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 678, 911 A.2d 300 (2006).

To the extent that there is any ambiguity as to the scope of the term "party" under § 52-572o—and we do not believe there is—a review of the available extratextual evidence strengthens our plain meaning construction leading to the conclusion that the comparative responsibility framework includes responsibility allocated to non-CPLA defendants. The legislature enacted No. 79-483 of the 1979 Public Acts, "An Act Concerning Product Liability Actions," after a series of lengthy hearings on the matter. The CPLA was based on the Draft Uniform Product Liability Law of 1979 (draft act). See 22 H.R. Proc., Pt. 20, 1979 Sess., p. 7021, remarks of Representative John A. Berman; see also U.S. Department of Commerce, Draft Uniform Product Liability

---

among other things, "all actions based on . . . negligence . . . breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent . . . [or] misrepresentation or nondisclosure, whether negligent or innocent").

Law, 44 Fed. Reg. 2996 (January 12, 1979) (Draft Uniform Product Liability Law). Although the floor debate did not address the precise scope intended by the use of the term "party" in the provision that became § 52-572o,[24] the legislative record demonstrates unequivocally that a principal purpose of the CPLA was to combat "the increased cost of product liability insurance" and its associated "impact on the prices of both consumer and industrial goods . . . ." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1979 Sess., p. 568, remarks of John Anderson, assistant counsel for the Connecticut Business and Industry Association; see also Senate Bill No. 443, 1979 Sess. ("STATEMENT OF PURPOSE: To restore balance in the law of product liability and relieve a serious economic problem."). This purpose also was articulated in the draft act, which sought to address the "[s]harply rising product liability insurance premiums [that] have created serious problems in interstate commerce . . . ." Draft Uniform Product Liability Law § 101 (a), supra, 44 Fed. Reg. 2997. The draft act identified "[u]ncertainty in product liability law" as one cause of these problems; id., § 101 (e); and attempted to "balance the interests of products users and sellers and to provide uniformity in the major areas of tort law that may affect product liability insurance ratemaking." Draft Uniform Product Liability Law, supra, 44 Fed. Reg. 2996 (Background of the Draft Law). The criteria used by the Department of Commerce to develop the draft act included "expedit[ing] the reparations process from the time of injury to the time the claim [was] paid" and "minimiz[ing] the sum of accident costs, prevention costs, and transaction costs." (Emphasis omitted.) Id. (Criteria for the Law).[25]

---

[24] See 22 H.R. Proc., Pt. 21, 1979 Sess., pp. 7288, 7294, remarks of Representative John A. Berman; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1979 Sess., p. 569, remarks of John Anderson, assistant counsel for the Connecticut Business and Industry Association.

[25] This purpose animating the provision of the CPLA for allocation of responsibility is consistent with the goals articulated in the Restatement (Third) of Torts. See Restatement (Third) Torts, Apportionment of Liability

This stated purpose helps explain not only why the legislature included a provision in the CPLA abrogating the common-law prohibition against contribution among responsible parties, but also intended to spread the cost of liability among all parties to an action involving a product liability claim. To begin with, the procedures established in § 52-572o allow litigants to improve the efficiency of the litigation process by consolidating the adjudication of the plaintiff's claims with a determination, by the same trier of fact, of each party's respective share of responsibility. A narrower construction of the term "party," limiting the procedure to include only parties to a product liability claim, would not achieve that purpose. Perhaps even more important, construing the term "party" to include non-CPLA defendants furthers the legislature's express goal of reducing the economic burden imposed by product liability claims and, in particular, the adverse impact on product sellers' insurance premiums as well as consumer prices for affected products. See Conn. Joint Standing Committee Hearings, supra, p. 568, remarks of Attorney Anderson. Allocating a percentage of responsibility to nonproduct sellers responsible for some portion of the harm caused by a product allows for a broader distribution of costs among all responsible parties, which correspondingly decreases the costs that are incurred (and must be passed along) by the product seller.

To conclude, the plain language of the statute demonstrates to our satisfaction that the only reasonable construction of the term "party" as applied to defendants includes all defendants in an action involving a claim for comparative responsibility under § 52-572o, regardless of whether those persons or entities are product

§ 10, reporters' note to comment (f), p. 107 (2000) ("[a]llocating responsibility once for an indivisible injury suffered by the plaintiff, in a single proceeding involving all responsible parties, has the advantage of efficiency and avoiding administrative difficulties involved in multiple assessments of responsibility for the same injury").

sellers named as defendants to the product liability claim. This construction finds support in extratextual evidence of the legislature's intentions animating the CPLA.

C

Wang makes two additional arguments in support of his claim that he is not subject to contribution under § 52-572o (e). First, as part of his contention that he was not a party to the underlying product liability claim, he argues that, once he withdrew his third-party product liability complaint against HBWS, he was not a party to a CPLA claim, whether as a defendant in Kissel's product liability claim or in a third-party complaint filed by HBWS seeking comparative responsibility (which HBWS never filed). He reasons that he cannot be subject to contribution on the basis of the allocation of comparative responsibility in the Kissel action because he was not made a party to a comparative responsibility claim in any such pleading. Our holding in part II A of this opinion disposes of this argument because we conclude that Wang is barred from arguing that he cannot be liable for comparative responsibility on the basis of the form of the pleading that he used to invoke the provisions of § 52-572o in the Kissel action.[26]

Although Wang's litigation choices in the Kissel action preclude him now from claiming that, due to HBWS's failure to file a complaint against Wang in that action, he was not a party subject to an adjudication of comparative responsibility, we pause to observe that,

---

[26] Although we have determined that Wang was a party to the underlying action, we briefly note that, contrary to his repeated assertions, HBWS could have brought an independent action for contribution against him, even if he had never been made a party to the underlying product liability action. This is the central premise of *Malerba* v. *Cessna Aircraft Co.*, supra, 210 Conn. 189. However, in such a scenario, Wang would not be bound by the allocation of comparative responsibility as determined in the underlying action.

ordinarily, a special defense alleging a claim of comparative responsibility is only appropriate to invoke the provisions of § 52-572o as to the party against whom the special defense is directed. Therefore, a party seeking an allocation of comparative responsibility would be well-advised to file a pleading to that effect directed to the defendant against whom allocation is sought, whether third-party defendant or not. It is well established that pleadings "must provide adequate notice of the facts claimed and the issues to be tried." *Tedesco* v. *Stamford*, 215 Conn. 450, 459, 576 A.2d 1273 (1990). "Whether a complaint gives sufficient notice is determined in each case with reference to the character of the wrong complained of and the underlying purpose of the rule [that] is to prevent surprise [to] the defendant." (Internal quotation marks omitted.) Id. In the Kissel action, after Wang had withdrawn his third-party complaint, HBWS should have filed a third-party complaint seeking allocation of comparative responsibility directly against Wang instead of relying on the third special defense contained in its pleading directed against Kissel. The pleading error is immaterial in this matter, as we have explained, because Wang manifestly understood that allocation of comparative responsibility was being sought as to him and conducted himself accordingly.

Wang's other argument relies on the fact that the medical malpractice portion of the judgment in the Kissel action was reversed on appeal.[27] He contends that

[27] The medical malpractice portion of the judgment in the Kissel action was reversed on the ground that Kissel's original pleading failed to comply with the provisions of § 52-190a, which, at the time the appeal was decided, were construed to require a plaintiff to include "an opinion letter from a similar health care provider with the complaint to establish personal jurisdiction, [such that] a timely challenge to the failure to include a legally sufficient opinion letter will result in a dismissal [of the medical malpractice claim]." *Kissel* v. *Center for Women's Health*, *P.C.*, supra, 205 Conn. App. 416. This holding was abrogated by *Carpenter* v. *Daar*, 346 Conn. 80, 287 A.3d 1027 (2023). See id., 123–24 ("The Appellate Court's recent decision in *Kissel* . . . reveals the danger of [the] conclusion [in *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 21 A.3d 451 (2011)] that the opinion letter implicates personal jurisdiction. By elevating the opinion letter to a jurisdictional pre-

the appellate disposition made the judgment against
him "void ab initio" because Kissel's noncompliance
with § 52-190a was, at the time, considered akin to
defective service of process and thus deprived the trial
court of personal jurisdiction over Wang. He concludes
that he consequently was never properly a "party" sub-
ject to the terms of § 52-572o. We find no merit in
this argument.

This contention misapprehends the operation and
effect of the comparative responsibility provisions in
§ 52-572o. The fact that the medical malpractice portion
of the judgment against Wang was reversed does not
alter the fact that Wang was a party to the Kissel action
for purposes of § 52-572o. The comparative responsibil-
ity claim contained in HBWS's third special defense to
the Kissel complaint identified Wang as a responsible
party, alleged that his negligence in his handling of the
heat lamp caused Kissel's injuries, was presented to
the jury, with his inducement and consent, as a basis
for finding him liable, and was one of two distinct and
independent grounds for the jury verdict against him.
Accordingly, the judgment against Wang in the Kissel
action contained two separate and distinct components.
The first component determined his liability to Kissel
for medical malpractice, noted the absence of any con-
tributory negligence on Kissel's part in connection with
that claim, and set forth the damages awarded for the
harm caused by Wang's medical malpractice. The sec-
ond component, mandated by § 52-572o (d), reflected
the jury's determination that he was 20 percent respon-
sible for Kissel's total damages *in connection with the*

---

requisite of any kind, it allows a potential prelitigation defect to defeat a
medical malpractice action that a jury has deemed meritorious after several
years of litigation."). Although it does not bear on the outcome of the
present appeal, we note that the judgment against Wang would not have
been reversed under the paradigm later adopted in *Carpenter.*

*product liability claim*. See footnotes 4 and 5 of this opinion and accompanying text.[28]

The Appellate Court reversed the medical malpractice portion of the judgment against Wang, but the judgment was affirmed in all other respects. See *Kissel* v. *Center for Women's Health, P.C.*, supra, 205 Conn. App. 436, 447. Wang never challenged the portion of the judgment against him involving the allocation of comparative responsibility. His failure to raise that issue on appeal in the Kissel action is particularly noteworthy because the trial court's memorandum of decision concerning the denial of Wang's motion to set aside the verdict stated that "[t]here is no claim that [Wang's] conduct . . . was not a proper subject of the process of determining the respective responsibility of the parties in the context of the product liability claim." The trial court in the Kissel action had jurisdiction over Wang to determine his comparative responsibility at the time that judgment was rendered, and the portion of the judgment allocating comparative responsibility was not reversed on appeal.

Wang relies on *Crotta* v. *Home Depot, Inc.*, supra, 249 Conn. 639–41, for the proposition that he cannot be "obligated" in an action for contribution because he was not "originally liable" to Kissel in the underlying action. *Crotta* has no application to the present case because it involved a claim for common-law contribution, not comparative responsibility and contribution under the CPLA. See id., 639. Section 52-572o establishes a statutory regime to govern contribution for

---

[28] The jury interrogatories in the Kissel action directed the jury to answer interrogatories eleven through thirteen, relating to comparative responsibility, even if the jury determined that Wang was not liable for medical malpractice. In other words, the trial court, the parties, and the jury in the Kissel action all understood that the question of Wang's liability for medical malpractice based on the allegations in Kissel's complaint was separate and distinct from the question of his liability for comparative responsibility under § 52-572o based on HBWS's third special defense.

parties within its scope. The statute substantially changed the common law by (1) establishing a system for the allocation of comparative responsibility among parties whose conduct causes indivisible harm to a plaintiff, (2) permitting contribution according to the proportionate responsibility of the parties, and (3) providing defendants with the option to pursue contribution claims either within the context of the original action involving a product liability claim or in a subsequent, independent contribution action. See *Malerba* v. *Cessna Aircraft Co.*, supra, 210 Conn. 195–96.[29] Wang is subject to a claim under the statutory scheme provided in § 52-572o, not a claim for common-law contribution. Under this statutory scheme, to the extent that the "rights and liabilities [of the defendants] were expressly put in issue in the first action, by cross complaint or other adversary pleadings, and determined by the judgment in the first action," they are res judicata in a subsequent action between them. (Internal quotation marks omitted.) Id., 197–98. Wang is therefore liable for contribution according to the percentage of comparative responsibility duly allocated to him in the underlying action. See, e.g., *Kyrtatas* v. *Stop & Shop, Inc.*, 205 Conn. 694, 702 n.2, 535 A.2d 357 (1988) (when all defendants are parties to original action, "a jury's findings concerning the relative responsibility of the parties are conclusive, and are entitled to res judicata status").

For purposes of the present contribution action, both Wang and HBWS were subject to the adjudication of comparative responsibility in the underlying action, and they are both bound by that adjudication.

---

[29] Our holding in *Malerba* cannot be harmonized with Wang's view that a claim for contribution is barred unless the parties to the contribution action already share a joint obligation arising from their liability to the plaintiff on the basis of a judgment in the underlying action. To the contrary, *Malerba* allows a party to pursue an independent contribution action, even as to a "prospectively liable third party" who was never impleaded in the original action. *Malerba* v. *Cessna Aircraft Co.*, supra, 210 Conn. 195.

## III

Wang next contends that the plaintiffs' contribution action is barred by the statute of limitations set forth in § 52-572o (e), which provides in relevant part that, "[i]f a judgment has been rendered, any action for contribution must be brought within one year after the judgment becomes final. . . ." Wang argues that a judgment becomes final for purposes of § 52-572o (e) when it is rendered by the trial court; HBWS argues that the judgment becomes final under the statute when all appellate remedies have been exhausted. The trial court agreed with HBWS, as do we.

The relevant dates are not in dispute. The trial court in the Kissel action rendered judgment on January 3, 2019. As previously detailed in this opinion, Wang and HBWS each filed timely appeals. Following proceedings in the Appellate Court; see generally *Kissel* v. *Center for Women's Health, P.C.*, supra, 205 Conn. App. 394; we denied HBWS's petition for certification to appeal on November 9, 2021. See *Kissel* v. *Center for Women's Health, P.C.*, supra, 339 Conn. 917. On that same date, we granted Kissel's petitions for certification to appeal. See *Kissel* v. *Center for Women's Health, P.C.*, supra, 339 Conn. 917; *Kissel* v. *Center for Women's Health, P.C.*, supra, 339 Conn. 916. Kissel filed her certified appeals but withdrew them on January 11, 2022, after receiving payment from HBWS in full satisfaction of the judgment. HBWS commenced the present action for contribution on May 10, 2022, well within the one year limitation period as construed by HBWS, but more than one year after the limitation period as construed by Wang.

Our review once again is plenary. Beginning with the plain language of the statute, it is of primary significance that the first sentence of subsection (e) uses the word "judgment" twice, first to refer to the precondition for

application of the relevant one year limitation period ("[i]f a judgment has been rendered"), and a second time to identify the specific event triggering the accrual of the one year period ("one year after the judgment becomes final"). General Statutes § 52-572o (e). We must presume under these circumstances that the legislature intended that there would be a difference between when "a judgment has been rendered" and when that "judgment becomes final." The distinction is plainly temporal and sequential. The statutory language, as the plaintiffs put it, indicates that "a judgment first comes into existence and later becomes final." Compare *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 175, 479 A.2d 1191 (1984) ("[t]he use of the present perfect tense of a verb indicates an action or condition that was begun in the past and is still going on or was just completed in the present"), with *Travelers Indemnity Co.* v. *Malec*, 215 Conn. 399, 404, 576 A.2d 485 (1990) ("The verb [used in the statute] speaks in the present tense. . . . We are entitled to presume that if the legislature intended that past acts could constitute compliance . . . language to that effect would appear in the statute."). It is well established that "[t]he [legislature's] use of a verb tense is significant in construing statutes." (Internal quotation marks omitted.) *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 281, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001). This point alone strongly indicates to us that an action for contribution accrues for purposes of § 52-572o (e) when all appellate proceedings are terminated, that is, when either the deadline to seek review has passed, or when all appellate proceedings have terminated.

We recognize that the term "final judgment" (phrased as "the judgment becomes final" in § 52-572o (e)) is a widely used legal term of art that can mean different things in different contexts. See General Statutes § 1-1 (a) ("technical words and phrases, and such as have

acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly"). We therefore consider our cases construing the term "final judgment" before arriving at a definitive conclusion as to its proper meaning for purposes of § 52-572o (e).

Wang points to *Preisner* v. *Aetna Casualty & Surety Co.*, 203 Conn. 407, 414, 525 A.2d 83 (1987), for the proposition that, under Connecticut law, "a judgment is generally final until it is reversed on appeal." This isolated quotation overlooks the central principle articulated in *Preisner*, which is that finality is heavily dependent on context. As we said in that case: "[T]he effect of a pending appeal [on] an otherwise final judgment has aptly been characterized as [o]ne of the most troublesome problems in applying the rule of finality [of judgments], because this is an area in which [t]here are no technically precise and universally recognized rules . . . . In the absence of universally applicable rules, *we have recognized that the relationship between a pending appeal and a judgment depends* [*on*] *the nature of the issue that is to be addressed.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 413–14. Indeed, in the particular circumstances at issue in *Preisner*, we concluded that the underlying trial court judgment, which involved liability on a promissory note, was *not final* during the pendency of the appellate process because the trial court judgment did not entitle the note holder "to levy execution to seize and sell assets belonging to [the note maker]. . . . [E]xecution was precluded by the outstanding stay." Id., 415. *Preisner* thus stands for the more nuanced proposition that the finality of judgment depends on the nature of the judgment at issue and the purpose for which the issue of finality is being determined, e.g., for purposes of appeal, execution, res judicata, or something else.[30] See also *In re Application*

---

[30] An aspect of *Preisner* seemingly more helpful to Wang is its passing observation that "a trial court judgment has been held to be final, despite

*of Title & Guaranty Co.*, 109 Conn. 45, 50, 145 A. 151 (1929) ("judgment becomes final only when [rendered by] a court from which execution can issue" (internal quotation marks omitted)).

Consistent with *Preisner*, "we have taken a functional approach in our construction of the term [final judgment], eschewing the application of inflexible rules in favor of a contextual analysis." *Stevens* v. *Aetna Life & Casualty Co.*, 233 Conn. 460, 467–68, 659 A.2d 707 (1995). Given the context-specific nature of the analysis, the meaning of finality for purposes of triggering the accrual of a contribution action under the CPLA is the meaning that best aligns with the language of the statute and best serves the purpose of § 52-572o (e), which is "to

a pending appeal, insofar as the issue was the triggering of the statute of limitations; [see] *Varley* v. *Varley*, 181 Conn. 58, 60–61, 434 A.2d 312 (1980) . . . ." (Citations omitted.) *Preisner* v. *Aetna Casualty & Surety Co.*, supra, 203 Conn. 414. Upon examination, however, the *Varley* case relied on in *Preisner* actually reinforces our conclusion that the statute of limitations in the present case does not accrue at the time that judgment is rendered in the trial court. The statute of limitations at issue in *Varley* was General Statutes (Rev. to 1977) § 52-582, which governs petitions for a new trial. See *Varley* v. *Varley*, supra, 59. That statute provides that the limitations period for filing a petition for a new trial accrues upon "the rendition of the judgment or decree complained of." General Statutes (Rev. to 1977) § 52-582; see also *Varley* v. *Varley*, supra, 59 and n.1. The *rendition* of judgment is generally an act performed by the trial court. See, e.g., *Bogaert* v. *Zoning Board of Appeals*, 162 Conn. 532, 535, 294 A.2d 573 (1972) ("[a] judgment is in fact rendered in a cause tried to the court when the trial judge officially announces his decision orally in open court, or, out of court, signifies orally or in a writing filed with the clerk in his official capacity the decision pronounced by him"). By contrast, as discussed in this opinion, the language of the statute of limitations in § 52-572o (e) distinguishes between the time that "a judgment has been rendered" and when that "judgment becomes final." Moreover, beyond the textual distinctions between General Statutes (Rev. to 1977) § 52-582 and § 52-572o (e), the discussion of finality in *Varley* implicated entirely different practical considerations. *Varley* involved the issue of when a new trial could be ordered to relitigate the same dispute; see *Varley* v. *Varley*, supra, 59; whereas the present case concerns when a separate action for contribution can be initiated based on a judgment in an underlying proceeding. Although both cases involve an assessment of finality for purposes of triggering a statute of limitations, the contexts are altogether different.

provide that if any liable defendant pays more than its proportional share of that net award, it may seek appropriate contributions from the other liable defendants." *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 14, 905 A.2d 55 (2006).

Applying this approach, the only plausible construction of the statute is that a judgment "becomes final" for purposes of § 52-572o (e) upon the termination of all appellate proceedings. Prior to the termination of appellate proceedings in the underlying action, the parties to an independent action for contribution have no certainty as to either the ultimate total award or the percentage of responsibility allocated to them. Requiring the initiation of a contribution claim within one year of judgment in the trial court would frustrate the statutory purpose of ensuring that a defendant does not ultimately "[pay] more than its proportional share" and would leave the parties and the court without guidance as to the amount of "appropriate contributions" to seek from the others. *Barry* v. *Quality Steel Products, Inc.*, supra, 280 Conn. 14. Moreover, there can be no execution on the underlying judgment until the appeal period expires. See Practice Book § 61-11 (a) ("[e]xcept where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to file an appeal has expired"). It follows that a contribution action accrues after the appeal period expires.

Our construction is consistent with the analysis of the United States District Court for the Eastern District of Texas interpreting Texas product liability law. In *Evanston Ins. Co.* v. *National Union Fire Ins. Co. of Pittsburgh, PA*, Docket No. 1:09-CV-909, 2012 WL 12977322 (E.D. Tex. March 19, 2012), the court concluded that a contribution claim in a product liability action accrues when the parties to the underlying action have exhausted all levels of appellate review, such that

the liability of the party seeking contribution is "absolutely certain." Id., *8. The court reasoned that, under Texas product liability law, "the doctrine of contribution is based on principles of equity and natural justice so that one shall not bear more than his just share of a common burden to the advantage of his co-obligors . . . ." (Internal quotation marks omitted.) Id. The purpose of contribution under Connecticut law is similar and weighs in favor of arriving at the same result.

We are unpersuaded by Wang's observation that the legislature has used different language in other statutes to define finality in terms of the termination of all appellate proceedings. He lists several examples of such statutes, including General Statutes §§ 52-572h (g) (1)[31] and 52-470 (d),[32] to demonstrate that the legislature's failure to include this explicit language in § 52-572o (e) indicates a different intention. In his view, the phrase "judgment becomes final" appears after the phrase "judgment has been rendered" out of a mere recognition "that some trial court judgments are interlocutory," such as a judgment in a bifurcated trial that determines liability but leaves open the question of damages, or a court's acceptance of a jury's verdict on comparative responsibility prior to its adjudication of postverdict motions.

The short answer to this argument is that the legislature is not required to express the same idea using the same language in every statute. No doubt, as a general proposition, we will adhere to the principle that, "[w]hen

---

[31] General Statutes § 52-572h (g) (1) provides in relevant part:, "Upon motion by the claimant to open the judgment filed [in a negligence action], after good faith efforts by the claimant to collect from a liable defendant, not later than one year *after judgment becomes final through lapse of time or through exhaustion of appeal,* whichever occurs later . . . ." (Emphasis added.)

[32] General Statutes § 52-470 (d) (1) provides in relevant part: "[T]he prior [habeas] petition is deemed to be a *final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review* . . . ." (Emphasis added.)

a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed . . . ." (Internal quotation marks omitted.) *In re Elianah T.-T.*, 326 Conn. 614, 624, 165 A.3d 1236 (2017). However, § 52-572o (e) does not so much omit altogether a commonly used statutory formulation as it does alter that formulation in a manner that is sui generis in Connecticut. Particularly in the context of final judgment jurisprudence, where irregularities and anomalies are not uncommon, it should not be surprising that the legislature has employed different language to mean the same thing. Cf. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Manning*, 578 U.S. 374, 384–85, 136 S. Ct. 1562, 194 L. Ed. 2d 671 (2016) (finding "nothing remarkable" in rule construing "completely different language . . . to mean exactly the same thing" (internal quotation marks omitted)). The anomaly disappears completely when we recognize that the source of the statutory language in this case was the draft act, which was promulgated by the United States Department of Commerce for use by the states. See Draft Uniform Product Liability Law, supra, 44 Fed. Reg. 2996. The relevant language of § 52-572o (e) was taken verbatim from § 112 of the draft act; see id., § 112 (e), 44 Fed. Reg. 3001; see also 22 H.R. Proc., Pt. 20, 1979 Sess., p. 7021, remarks of Representative Berman; which, in turn, was adopted directly from § 5 of the Uniform Comparative Fault Act of 1977 (UCFA). See Draft Uniform Product Liability Law, supra, 44 Fed. Reg. 3012 ("[§] 112 is based on [§§] 4 and 5 of the UCFA").[33] The origin of the statutory text

---

[33] We observe that only two of our sister states, Iowa and Washington, have adopted the UCFA; see Iowa Code Ann. § 668.1 et seq. (West 2016); and Wn. Rev. Code Ann. § 4.22.005 et seq. (West Cum. Supp. 2025); and reference to their jurisprudence in this area is of limited use as neither of their state courts of last resort have squarely addressed the issue of when a judgment becomes final for purposes of triggering the statute of limitations in an action for contribution.

explains why its language is not identical to that appearing in other provisions of the General Statutes.

We conclude that a "judgment becomes final" for purposes of triggering the statute of limitations in an independent contribution action pursuant to § 52-572o (e) upon the termination of appellate proceedings in the underlying action, including the expiration of all applicable stays of execution. In the present case, the judgment in the Kissel action became final on November 19, 2021, which is ten days after certification to appeal was denied by this court on November 9, 2021.[34] See *Kissel* v. *Center for Women's Health, P.C.*, supra, 339 Conn. 917. The plaintiffs timely initiated the present contribution action in May, 2022, well within the one year statute of limitations. We therefore hold that the contribution action is timely.

## IV

To summarize, we hold that the term "party" for purposes of an adjudication of comparative responsibility under § 52-572o applies to all defendants in an action involving a product liability claim. Wang was a party to the Kissel action, his comparative responsibility for the damages awarded in connection with the product liability claim was assessed by the trier of fact to be 20 percent, and that aspect of the judgment was not reversed on appeal. Accordingly, he is bound in the present action for contribution by the underlying judgment assigning him 20 percent comparative responsibility. We further hold that the phrase "after the judgment

[34] Pursuant to Practice Book § 71-6 (a), "[u]nless the chief justice or chief judge shall otherwise direct, any stay of proceedings which was in effect during the pendency of the appeal shall continue until the time for filing a motion for reconsideration has expired, and, if a motion is filed, until its disposition, and, if it is granted, until the appeal is finally determined." A motion for reconsideration of a decision of the Supreme Court must be filed "within ten days from the date when the decision or . . . order being challenged is officially released." Practice Book § 71-5.

becomes final" for purposes of triggering the statute of limitations in an independent contribution action under § 52-572o (e) refers to the judgment upon termination of appellate proceedings and that the plaintiffs' present contribution action was timely.

The judgment is affirmed.

In this opinion the other justices concurred.